

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed July 1, 2025**

**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 24-33352** |
| **UPTOWN DENTAL SOLUTIONS, PLLC** | § | |
| **D/B/A LAKESIDE DENTAL SOLUTIONS,** | § | |
| | § | **Chapter 11 (Subchapter V)** |
| Debtor. | § | |

### ORDER CONFIRMING NONCONSENSUAL FIRST
### AMENDED CHAPTER 11 PLAN OF REORGANIZATION

On June 26, 2025, at 9:30 a.m., the Court held a hearing (the "<u>Confirmation Hearing</u>") to

consider confirmation of the *First Amended Chapter 11 Plan of Reorganization* (the "<u>Plan</u>")[1] filed

by Uptown Dental Solutions, PLLC d/b/a Lakeside Dental Solutions (the "<u>Debtor</u>") on April 30,

2025 [Docket No. 100]. Present or making appearances at the hearing were counsel for the Debtor,

the Debtor's representative, Areya Holder Aurzada, the Subchapter V Trustee appointed in the

case (hereinafter "<u>Sub V Trustee</u>"), counsel for certain creditors who have entered an appearance

---

[1] Capitalized terms used herein without definition shall have the meanings provided for in the Plan. In addition, any term used in the Plan or this Order that is not defined in the Plan or this Order, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules.

1

in the case, and the United States Trustee. The Court has reviewed the Plan, considered the documents admitted into evidence and the testimony of witnesses present at the hearing, considered the statements and arguments of counsel, the docket of the Bankruptcy Case, and considered any other relevant factors affecting the case as set forth on the record.

**Based upon the foregoing, the Court finds and determines as follows:**

A.      The Debtor filed this case on October 25, 2024 (the "<u>Petition Date</u>") and was qualified to be a Debtor under 11 U.S.C. § 109. The Debtor was also qualified and elected to proceed as a small business debtor under Subchapter V of the Bankruptcy Code as that term is defined by 11 U.S.C. § 1182(1).

B.      This Court has jurisdiction over the Case pursuant to 28 U.S.C. §§ 157(a) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (L) and (O), and this Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and whether it should be confirmed. Venue in the Northern District of Texas was proper on the Petition Date and continues to be proper under 28 U.S.C. §§ 1408 and 1409.

C.      Every person or entity required to receive notice of the hearing on confirmation of the Plan, as well as the Plan voting and Plan objection deadlines set by the Court, received timely and adequate notice as required by the Federal Rules of Bankruptcy Procedure ("<u>Bankruptcy Rules</u>") 2002 and 9014 and the Bankruptcy Code.

D.      The contents of the Plan (with any modifications as set forth below) satisfy the applicable requirements of 11 U.S.C. § 1190 and any other applicable requirements of the Bankruptcy Code.

E.      The Plan (with any modifications as set forth below) and the Debtor have satisfied all applicable requirements for confirmation of the Plan under 11 U.S.C. § 1191(b).

F.       The Plan (with any modifications as set forth below) and the Debtor have satisfied all other requirements of the Bankruptcy Code and Bankruptcy Rules necessary to confirm the Plan.

**THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AS FOLLOWS:**

1.       The First Amended Chapter 11 Plan of Reorganization filed by the Debtor on April 30, 2025 [Docket No. 100] and attached hereto as **Exhibit A**, is hereby **CONFIRMED** and approved in each and every respect as a nonconsensual plan pursuant to 11 U.S.C. § 1191(b). The terms of the Plan are incorporated by reference into, and are an integral part of, this Confirmation Order.

2.       The objection to the Plan filed by Dallas County and Rockwall CAD have been resolved by the addition of paragraphs 16 of this Confirmation Order, and therefore, have been withdrawn.

3.       The effective date of the Plan shall be July 28, 2025 ("Effective Date"), notwithstanding anything to the contrary in the Plan.

4.       In the event of a conflict between the provisions of the Plan and this Confirmation Order, the terms of this Confirmation Order shall control.

5.       Within three (3) days after the Effective Date, the Debtor shall serve notice of (i) entry of this Confirmation Order; (ii) the occurrence of the Effective Date; and (iii) any bar dates and any other deadlines set by the Plan ("Notice"), pursuant to Bankruptcy Rule 3020(c). The Notice shall be sent to all creditors and parties-in-interest by first class mail, postage prepaid. The Debtor shall thereafter promptly file a copy of such Notice with proof of mailing with the Court.

6.       The provisions of the Plan, and any documents executed in conjunction with the

Plan, and this Confirmation Order are, as of the Effective Date, effective and binding on the Debtor, all creditors of the Debtor, and any other parties-in-interest, as well as their respective heirs, successors, assigns, or other persons claiming through them. The failure to specifically describe or include any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be approved and confirmed in its entirety subject to the modifications set forth herein. Each provision of the Plan shall be deemed authorized and approved by this Confirmation Order, subject to the modifications set forth herein, and shall have the same binding effect of every other provision in the Plan, whether or not mentioned in this Confirmation Order.

7.     The Debtor and its respective agents and attorneys are hereby authorized, empowered, and directed to carry out the provisions of the Plan and to perform the acts and execute and deliver the documents as are necessary or appropriate in connection with the Plan and this Order.

8.     Nothing in this Confirmation Order or the Plan shall in any way operate to, or have the effect of, impairing or extinguishing in any respect any causes of action disclosed on Debtor's schedules or arising under chapter 5 of the Bankruptcy Code or any other claims or defenses owned by the Debtor on the Effective Date, and the Debtor shall retain such claims as provided in the Plan, including any claims or defenses that may not have been defined in the Plan but are nonetheless owned by the Debtor on or before the Effective Date. After the Effective Date, the Debtor may, in accordance with the provisions of the Plan, evaluate and determine whether to pursue any such retained claims.

9.     Except as otherwise expressly provided in the Plan, all payments and other distributions to be made under the Plan shall be timely and proper if mailed by first class mail on

or before the date of distribution provided for in the Plan to the address listed in the creditor's proof of claim filed in this case, or, if no proof of claim is filed, to the creditor's last known mailing address.

10. On the Effective Date, Debtor shall be and is hereby discharged to the extent and as provided by 11 U.S.C. § 1141(d)(1), except that Debtor will not be discharged of any debt or obligation: (i) imposed by this Plan; (ii) excepted from discharge under 11 U.S.C. § 523 as provided by 11 U.S.C. § 1141(d)(2) if the Debtor is an individual; and (iii) to the extent provided in 11 U.S.C. § 1141(d)(6) if the Debtor is a corporation.

11. The Debtor and all holders of Claims and Interests are bound by the Plan within the meaning of 11 U.S.C. § 1141.

12. The Court shall retain jurisdiction of this case for all purposes provided in 11 U.S.C. §§ 1127(b) and 1142, and Bankruptcy Rule 3020(d).

13. Pursuant to 11 U.S.C. § 1141(b), except as otherwise provided in the Plan or in this Confirmation Order, as of the Effective Date, all the property of the Estate vests in the Debtor. Except as provided in 11 U.S.C. § 1141(d)(2) and (3), and except as otherwise provided in the Plan or in this Confirmation Order, after Confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Interests of creditors. If the Debtor's bankruptcy case is subsequently converted to Chapter 7, all property of the Debtor shall automatically revest and become property of the bankruptcy estate of the Debtor in the converted Chapter 7 case.

14. The services of the Subchapter V Trustee shall terminate upon substantial consummation of the Plan, which in this Bankruptcy Case shall occur after the Debtor makes one payment under the Plan, and the Debtor is to file and serve a Notice of Substantial Consummation upon the Subchapter V Trustee, the U.S. Trustee, and all parties-in-interest within fourteen (14)

days following substantial consummation as required under 11 U.S.C. § 1183(c)(1) and (2).

15.     This Confirmation Order is a final order and effective and enforceable immediately upon entry and the period in which an appeal must be filed shall commence upon the entry hereof.

16.     Section 3.3 of the Plan shall be modified as follows:

Pursuant to the PLLC Membership Interest Transfer Agreement dated June 22, 2025 (the "Amended Transfer Agreement") and the terms of this Plan, the membership shares of the Debtor's owner, Dr. Beirute-Prada, shall be transferred to Shane Shoulders with NewCo immediately after the entry of the Confirmation Order in exchange for the assumption of debt in the amount of $1,350,000.00. Attached to this Confirmation Order as **Exhibit B** is a true and correct copy of the Amended Transfer Agreement. After confirmation, Michael Richardson ("Richardson") shall manage the operations of the Reorganized Debtor.

17.     Section 6.4 of the Plan shall be modified as follows:

The Equity Interest of the Debtor shall remain vested with Rashid Beirute-Prada, DDS, MDS until the entry of this Confirmation Order, after which time the Equity Interest of the Reorganized Debtor shall be transferred to Shane Shoulders with NewCo pursuant to the PLLC Membership Interest Transfer Agreement dated June 22, 2025.

18.     Section 7.3 of the Plan shall be modified as follows:

If the Plan is confirmed under section 1191(b), the Debtor proposes that Richardson shall serve as the disbursing agent. There is cause to have Richardson serve as the disbursing instead of the Subchapter V Trustee because the costs of utilizing the services of the Subchapter V Trustee would be expensive.

19.     Section 7.4 of the Plan shall be modified as follows:

Richardson on behalf of NewCo shall manage the operations of the Reorganized Debtor.

20.     Notwithstanding anything to the contrary in this Confirmation Order or the Plan, the following terms apply to the claims of Dallas County and Rockwall CAD:

**Payments**.   Dallas County and Rockwall CAD (collectively, the "Taxing Authorities") are Holders of Secured Tax Claims. Each Holder of an Allowed Secured Tax Claim shall be paid in full in equal monthly installments commencing thirty (30) days after the Confirmation Date

over a period ending not later than 5 years after the Petition Date with statutory post-petition interest at the rate of 12% per annum, accruing from the Petition Date until such taxes are paid in full.

**Survival of Lien**.   Notwithstanding anything contained in this Plan or in the Confirmation Order to the contrary, any prepetition and postpetition tax liens securing the Taxing Authorities' ad valorem taxes shall be retained until such taxes are paid in full under the terms of this Plan. Nothing in the Plan or Confirmation Order shall impair the tax lien claims of the Taxing Authorities.

**Maintenance of Postpetition Taxes**.   Debtor shall pay the taxes attributable for the 2025 and subsequent tax years in the ordinary course, prior to delinquency, with any default subject to applicable nonbankruptcy law, including immediate collection actions in state court, without further notice or order from the Bankruptcy Court. No administrative expense claim or a request for payment is required for payment of postpetition taxes.

**Plan Injunction and Monetary Defaults**.   The Plan injunction of the Plan shall not impair the rights of the Taxing Authorities to enforce their tax liens against their collateral. In the event a Holder of a Secured Tax Claim does not receive timely tender of the payments set forth above, such Taxing Authority shall send written notice by Regular Mail and by Certified Return Receipt Requested Mail, postage prepaid, to Debtor and Counsel for Debtor, and allow Debtor a 30-day period from the date of such written notice to cure such delinquent payments. Cure payments must be made by certified funds to the respective Taxing Authority. In the event Debtor fails to cure such delinquent payments within such 30-day period, the respective Taxing Authority shall be allowed to take any and all steps necessary to exercise any and all rights available to them under applicable nonbankruptcy law, including immediate collection actions and foreclosure of

tax liens on collateral.

**Specific Terms of Treatment**.  The specific terms of the treatment of the Taxing Authorities' Claims set forth above shall control over any general terms set forth in the Plan.

# # # END OF ORDER # # #

## EXHIBIT A

**Chapter 11 Plan of Reorganization**

Brandon J. Tittle
Texas Bar No. 24090436
**TITTLE LAW FIRM, PLLC**
1125 Legacy Dr., Ste. 230
Frisco, Texas 75034
Telephone: 972.213.2316
Email: btittle@tittlelawgroup.com

**COUNSEL FOR DEBTOR**
**AND DEBTOR-IN-POSSESSION**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 24-33352** |
| **UPTOWN DENTAL SOLUTIONS, PLLC** | § | |
| **D/B/A LAKESIDE DENTAL SOLUTIONS,** | § | |
| | § | **Chapter 11 (Subchapter V)** |
| Debtor. | § | |

**FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION**

Uptown Dental Solutions, PLLC d/b/a Lakeside Dental Solutions, the debtor and debtor in possession in the above-captioned case, hereby proposes the following Plan pursuant to § 1121 of the Bankruptcy Code. The Debtor is a proponent of the Plan within the meaning of § 1129 of the Bankruptcy Code.

This Plan constitutes a chapter 11 reorganization plan for the Debtor. In summary, the Plan provides for the Debtor to restructure its debts by reducing its monthly payments to the amount of the Debtor's Disposable Income. The Debtor believes that the Plan will ensure Holders of Allowed Claims will receive greater distributions under the Plan than they would if the Debtor's Chapter 11 Case was converted to Chapter 7 and the Debtor's Assets liquidated by a Chapter 7 Trustee.

Subject to the restrictions on modifications set forth in § 1193 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in this Plan, as a proponent, the Debtor expressly reserves the right to alter, amend, or modify the Plan one or more times before its confirmation, for the resolution of its outstanding Claims and Equity Interests, without prejudice to any Holders of Claims, Equity Interests or other parties in interest to object to same.

All Holders of Claims against, and Equity Interests in, the Debtor is encouraged to read the Plan in its entirety.

**NOTWITHSTANDING ANYTHING IN THIS PLAN TO THE CONTRARY, UNLESS OTHERWISE STATED, ALL STATEMENTS IN THIS PLAN CONCERNING THE DEBTOR'S HISTORY, THE HISTORY OF THE DEBTOR'S BUSINESS, THE PAST OR PRESENT FINANCIAL CONDITION OF THE DEBTOR, TRANSACTIONS TO WHICH THE DEBTOR WAS OR IS A PARTY, OR THE EFFECT OF CONFIRMATION OF THE**

**PLAN ON SECURED CREDITORS, UNSECURED CREDITORS, OR HOLDERS OF EQUITY INTERESTS ARE ATTRIBUTABLE EXCLUSIVELY TO THE DEBTOR AND NOT ANY OTHER PARTY.**

## EXPLANATION OF THE PROCESS OF CONFIRMATION

Acceptance of the Plan by the Creditors and Equity Interest Holders is important. In order for the plan to be accepted by each class of claims, the creditors that hold at least two thirds (2/3) in amount and more than one-half (1/2) in number of the allowed claims actually voting on the plan in such class must vote for the plan and the equity interest holders that hold at least two-thirds (2/3) in amount of the allowed interests actually voting on the plan in such class must vote for the plan. As set forth above, a Subchapter V Chapter 11 does not require that each holder of a claim against, or interest in, the debtor vote in favor of the plan in order for it to be confirmed by the Court.

Confirmation of the plan discharges the debtor from all of its pre-confirmation debts and liabilities except as expressly provided for in the plan and Section 1141(d) of the Code. Confirmation makes the plan binding upon the debtor and all claimants, equity interest holders and other parties-in-interest, regardless of whether or not they have accepted the plan.

## VOTING PROCEDURES

**Unimpaired Class**. Claimants in Classes 1 and 4 of the Plan are not impaired under the Plan. Such Claimants are deemed to have accepted the Plan.

**Impaired Classes**. Claimants in Classes 2 through 3 of the Plan are impaired as defined by Section 1124 of the Code. The Debtor is seeking the acceptance of the Plan by Claimants in Classes 2 through 3. Each holder of an Allowed Claim in Classes 2 through 3 may vote on the Plan by completing, dating, and signing the ballot sent to each holder and filing the ballot as set forth below.

For all Classes, the ballot must be returned to Tittle Law Firm, PLLC, Attn. Brandon J. Tittle, Esq., 1125 Legacy Dr., Ste. 230, Frisco, Texas 75034. In order to be counted, ballots must be **RECEIVED** no later than at the time and on the date stated on the ballot.

## BEST INTERESTS OF CREDITORS TEST

Section 1129(a)(7) of the Code requires that each impaired class of claims or interests accept the Plan or receive or retain under the Plan on account of such claim or interest, property of a value as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. If Section 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, each holder of a claim of such class will receive or retain under the Plan, on account of such claim, property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's interest in the estates' interest in the property that secures such claims. In order for the Plan to be confirmed, the Bankruptcy Court must determine that the Plan is in the best interests of the Debtor's creditors. Accordingly, the proposed Plan must provide the Debtor's creditors with at least as much as they would receive in a Chapter 7 liquidation. It is anticipated that in a Chapter 7

liquidation, the Debtor's creditors, other than the secured creditors, would receive nothing. Accordingly, since the Plan proposes a substantial dividend to all creditors, such creditors are receiving more than they would receive in a Chapter 7 liquidation. Accordingly, the Plan satisfies the requirements of Section 1129(a)(7).

**ARTICLE I.**
**DEFINITIONS**

**1.1**    <u>**Definitions**</u>.

As used in the Plan, the following terms shall have the respective meanings specified below.  Any term used in the Plan not defined below or herein shall be interpreted in accordance with the Rules of Construction and Interpretation set forth in the following Articles of this Plan. Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine and the feminine gender shall include the masculine.

**"<u>Administrative Claims</u>"** means a Claim for payment of an administrative expense of a kind specified in §§ 503(b), 507(b), and 1114(e)(2) of the Bankruptcy Code and referred to in § 507(a)(2) of the Bankruptcy Code, including, without limitation, the actual, necessary costs and expenses incurred on or after the Petition Date for preserving the Estate of the Debtor, any actual and necessary costs and expenses of operating the business of the Debtor incurred on or after the Petition Date but prior to the Effective Date, any indebtedness or obligations incurred or assumed by the Estate in connection with the conduct of the Debtor's business on or after the Petition Date and prior to the Effective Date, any Professional Fee Claim, all fees and charges assessed against the Estate under Chapter 123, Title 28, United States Code, and any Claim granted administrative-expense priority status by Final Order.

**"<u>Allowance Date</u>"** means the date on which a Claim is Allowed.

**"<u>Allowed</u>"** means a Claim or Equity Interest that: (a) is listed in the Schedules in a liquidated, non-contingent, and undisputed known amount, but only if no proof of Claim or proof of Equity Interest is filed with the Bankruptcy Court to evidence such Claim or Equity Interest on or before the Bar Date and no objection thereto has been timely filed; (b) is evidenced by a proof of Claim or proof of Equity Interest filed on or before the Bar Date, but only if no objection to the allowance of the Claim or Equity Interest or no motion to expunge the proof of Claim or Equity Interest has been timely filed; (c) is allowed by a Final Order; or (d) is otherwise allowed pursuant to the terms of the Plan.  Notwithstanding any other provision of the Plan, the term Allowed in reference to any Claim shall not include any Claim or Equity Interest held by any Claimant or purported Equity Interest Holder against whom the Debtor has asserted a Cause of Action by filing an objection or complaint/ petition with a court of competent jurisdiction.  No Allowed Claim or Equity Interest shall include any penalty or any interest accrued after the Petition Date, except as otherwise provided herein

**"<u>Assets</u>"** shall have the meaning ascribed in Section 3.2 of the Plan.

**"<u>Avoidance Actions</u>"** means any cause of action commenced, or that that may be

commenced before or after the Effective Date, pursuant to §§ 510, 522, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552, or 553 of the Bankruptcy Code, including, without limitation, such actions that arise under state law for fraudulent conveyance and other similar avoidance actions.

"**Bankruptcy Code**" means Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Northern District of Texas, Dallas Division.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as amended and prescribed under section 2075, Title 28, United States Code, as applicable to the Chapter 11 Case, together with the Local Rules of the Bankruptcy Court.

"**Bar Date**" means the last date on which proofs of Claim may be timely filed against the Debtor unless otherwise extended by Final Order of the Bankruptcy Court, which is January 3, 2025, for all claimants.

"**Business Day**" means any day other than a Saturday, Sunday or "legal holiday" as defined in Bankruptcy Rule 9006(a).

"**Cash**" means Cash and cash equivalents.

"**Causes of Action**" means any action, cause of action, suit, account, controversy, agreement, promise, right to legal remedy, right to equitable remedy, right to payment, and claim, including Avoidance Actions, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured and whether asserted or assertable directly or indirectly or derivatively, in law, equity or otherwise, including, without limitation: (a) any claim or right to recover damages (general, exemplary, or otherwise) relating to or based on (i) fraud, negligence, gross negligence, willful misconduct, or any tort actions, (ii) violations of federal or state securities laws, (iii) violations of applicable corporate or partnership laws, (iv) breaches of fiduciary or agency duties, (v) unjust enrichment, suit on a sworn account, accounting, quantum meruit, restitution, (vi) malpractice, (vii) breach of contract, (viii) conversion, (ix) recharacterization, (x) alter ego, aiding and abetting, conspiracy, *respondeat superior*, or other vicarious or secondary liability claims relating to all of the aforementioned claims, or (xi) any other claim of the Debtor against any party, to the extent not specifically compromised or released pursuant to the Plan, or a Final Order entered by the Bankruptcy Court after notice and opportunity for hearing; (b) any claims of the Debtor for subordination under § 510 of the Bankruptcy Code or under other applicable laws; (c) any objection to any Disputed Claim that includes as a basis any counterclaim by the Debtor or the Estate for affirmative relief, and is pending and not resolved by Final Order as of the Effective Date, together with all liability of the Debtor or the Estate on account of such Disputed Claims; and (d) all claims and defenses asserted by the Debtor in a contested matter or an adversary proceeding or other civil litigation. Causes of Action also specifically include: (i) all Avoidance Actions; (ii) all tort and common law claims held by the Debtor against any person, including, without limitation, the following: (a) Persons that were or are joint venturers or partners with, or controlling persons of, the Debtor, (b) Governmental Units, including taxing authorities, (c) Holders of Equity Interests; and (iii) all claims held by the Debtor whether in contract, tort, or

statutory law against current or former: (a) customers, (b) Claimants, (c) officers, managers, members, and directors, (d) suppliers (including any person with whom the Debtor ever did business), (e) employees, (f) managers and affiliates, and (g) insurers (including, without limitation, for directors and officers liability coverage, business interruption, or similar claims).

"**Chapter 11 Case**" **or** "**Case**" means Debtor's bankruptcy case commenced by the filing of voluntary petition for relief for the Debtor on October 25, 2024, under chapter 11 of the Bankruptcy Code, administered under Case No. 24-33352 pending before Bankruptcy Judge Stacey G.C. Jernigan in the Bankruptcy Court.

"**Claim**" means any right to payment from the Debtor or its Estate, whether or not such right is reduced to judgment, liquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, known or unknown; or any right to an equitable remedy against the Debtor or its Estate for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, known or unknown or as otherwise within the definition of "claim" as set forth in § 101(5) of the Bankruptcy Code

"**Claimant**" means a Person holding a Claim against the Debtor, property of the Debtor, the Estate, or any Asset.

"**Claims Objection Deadline**" shall be one hundred and eighty (180) days after the Effective Date, unless such date is extended by the Bankruptcy Court upon motion filed with the Bankruptcy Court by the Reorganized Debtor on or prior to such date.

"**Class**" means any group of substantially similar Claims or Equity Interests classified by the Plan pursuant to § 1122 of the Bankruptcy Code.

"**Clerk**" means the Clerk of the Bankruptcy Court.

"**Collateral**" means any property or interest in property of the Estate that is subject to a Lien to secure the payment or performance of a Claim, which such Lien is not avoided, subject to avoidance under the Bankruptcy Code, or other applicable law or otherwise invalid under the Bankruptcy Code or applicable law.

"**Confirmation**" means the entry of the Confirmation Order on the docket in the Chapter 11 Case.

"**Confirmation Date**" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

"**Confirmation Hearing**" means the hearing held by the Bankruptcy Court pursuant to § 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

"**Confirmation Order**" means the Order of the Bankruptcy Court, and any amendment thereto, confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

"**Contingent Claim**" means a Claim for which the Debtor's legal duty to pay does not come into existence until triggered by the occurrence of a future event.

"**Debtor**" means Uptown Dental Solutions, PLLC d/b/a Lakeside Dental Solutions, the Debtor and Debtor-in-Possession in the Chapter 11 Case.

"**Debtor-in-Possession**" means the Debtor in its capacity as a debtor-in-possession pursuant to § 1184 of the Bankruptcy Code.

"**Deficiency Claim**" means any portion of a Secured Claim (a) to the extent the value of the Collateral securing such Claim is less than the amount of such Claim or (b) to the extent the amount of the Claim that is secured by a right of setoff is less than the amount of such Claim, each as determined pursuant to § 506(a) of the Bankruptcy Code.

"**Disallowed**" means a Claim or Equity Interest, any portion thereof, that: (a) has been disallowed by either a Final Order or pursuant to a settlement; (b) has been withdrawn by the Holder of the Claim or Equity Interest; (c)(i) is set forth in the Schedules at zero or as contingent, disputed, or unliquidated and (ii) as to which no proof of Claim or proof of Equity Interest has been filed or deemed filed with the Bankruptcy Court by the Bar Date or pursuant to either the Bankruptcy Code or a Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law; or (d) has not been scheduled in the Schedules and as to which no proof of Claim or Equity Interest has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, a Final Order, or the Plan.

"**Disposable Income**" means the income that is received by the Debtor from its business operations, including all proceeds received by the Reorganized Debtor from nail salon services, that is not reasonably necessary to be expended for the payment of its expenditures necessary for the continuation, preservation, or operation of the Debtor's business.

"**Disputed Claim**" means the portion (including, when appropriate, the whole) of a Claim that is not an Allowed Claim as to which: (a) a proof of Claim has been filed or deemed filed under applicable law or Order of the Bankruptcy Court; (b) an objection has been filed; and (c) such objection has not been (i) withdrawn, (ii) overruled or denied in whole or in part pursuant to a Final Order, or (iii) granted in whole or part pursuant to a Final Order.  Before the Claim Objection Deadline, a Claim shall be considered a Disputed Claim: (a) if the amount or classification of the Claim specified in the proof of Claim exceeds the amount or classification of any corresponding Claim scheduled by the Debtor in its Schedules, to the extent of such excess; (b) in its entirety, if any corresponding Claim scheduled by the Debtor has been scheduled as disputed, contingent, or unliquidated in its Schedules; (c) in its entirety, if no corresponding Claim has been scheduled by the Debtor in its Schedules; or (d) such Claim is otherwise objectionable.

"**Distribution**" means the property distributed to the Holders of Allowed Claims in accordance with the Plan, Confirmation Order, and Bankruptcy Code.

"**Effective Date**" means thirty (30) days after the Court enters an order confirming the Plan.

"**Entity**" means an entity as such term is defined in § 101(15) of the Bankruptcy Code.

"**Equity Interest**" means any ownership interest in the Debtor represented by shares of stock, or membership or partnership interest in the Debtor, including, to the extent provided by applicable law, any warrant, option, or other security to acquire any of the foregoing in the Debtor.

"**Estate**" means the bankruptcy Estate created on the filing of the Chapter 11 Case pursuant to § 541 of the Bankruptcy Code, together with all rights, claims and interests appertaining thereto.

"**Face Amount**" means (i) as to a Disputed Claim, the full stated amount claimed by the Holder of such Claim in any proof of Claim timely filed, or deemed timely filed, with the Bankruptcy Court, and (ii) as to an Allowed Claim, the full stated amount of such Claim claimed by the Holder of such Claim in any proof of Claim timely filed, or deemed timely filed, with the Bankruptcy Court or the amount reflected in a Final Order or in the Schedules, as amended, if such claimant was not required to file a proof of Claim by reason of the Bankruptcy Rules, or in an amount agreed to by the Holder of such Claim and the Debtor.

"**Final Order**" means an order or judgment under 28 U.S.C. § 158(a)(1) of the Bankruptcy Court or other court having jurisdiction over any matter that (a) has not been reversed, stayed, or vacated, (b) the time to appeal, petition for certiorari, or move for a new trial, re-argument, or rehearing has expired, and no such action has occurred, or (c) if a timely appeal is filed, upon completion of the appellate process either through the expiration of an initial deadline for invoking further appellate jurisdiction or, if in the United States Supreme Court, through the issuance of that Court's final decision; *provided*, *however*, no order shall fail to be a Final Order because of the possibility that a motion pursuant to Rules 59 or 60 of the Federal Rules of Civil Procedure (and Bankruptcy Rules 9023 and 9024, respectively) may be filed to that order.

"**Governmental Unit**" means a governmental unit as such term is defined in § 101(27) of the Bankruptcy Code.

"**Holder**" means any Entity holding a Claim or an Equity Interest.

"**Impaired**" means, when used in reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of § 1124 of the Bankruptcy Code.

"**Injunction Beneficiaries**" means the Injunction Beneficiaries as defined in Section 11.3 of the Plan.

"**Lien**" means a charge against or interest in property to secure payment of a debt or performance of an obligation, including, but not limited to, a mortgage, deed-of-trust lien, security interest, judicial lien, judgment lien, pledge, encumbrance, or writ of attachment.

"**Order**" Any order, mandate, precept, command, or direction formally given or entered by court of competent jurisdiction.

"**Person**" means as identified in § 101(41) of the Bankruptcy Code and includes an individual, corporation, partnership, joint venture, association, limited liability company, limited liability partnership, trust, Estate, unincorporated organization, governmental entity or political subdivision thereof, or any other entity.

"**Petition Date**" means October 25, 2024, the date on which the Debtor filed its voluntary chapter 11 petition commencing the Chapter 11 Case.

"**Plan**" means this Chapter 11 Plan of Reorganization, as it may be amended or modified.

"**Plan Documents**" means the documents to be executed, delivered, assumed, and/or performed in conjunction with the consummation of the Plan on the Effective Date.

"**Post-Confirmation Service List**" means a list of parties-in-interest to whom post-confirmation service of process shall be provided.  The Post-Confirmation Service List shall be limited, and shall consist of only (a) the Debtor, (b) the Subchapter V Trustee, (c) the United States Trustee, (d) any party who after entry of the Confirmation Order files a request for such notice with the Clerk, and (e) counsels/attorneys of records of the parties identified in (a) – (d).

"**Prime**" shall mean the prime interest rate that runs approximately 300 basis points (or 3 percentage points) above the federal funds rate, which is the interest rate that banks charge each other for overnight loans made to fulfill reserve funding requirements.  As of January 19, 2025, the prime interest rate is 7.50% in the United States.

"**Priority Claim**" shall mean any Claim entitled to priority pursuant to Section 507(a) of the Code except for Tax Claims and Claims incurred by the Debtor post-petition in the ordinary course of business.

"**Proof of Claim**" or "**Proof of Interest**" means a proof of claim or proof of interest, as the case may be, filed with the Bankruptcy Court with respect to the Debtor pursuant to § 501 of the Bankruptcy Code and Bankruptcy Rules 3001, 3002, or 3003 in accordance with the various orders of the Bankruptcy Court.

"**Proponent**" means the Debtor.

"**Pro Rata**" means the proportion that the dollar amount of an Allowed Claim in a Class bears to the aggregate amount of all Allowed Claims in such Class or if distribution is to multiple Classes of equal priority, the aggregate amount of all Allowed Claims in such Classes.

"**Reorganized Debtor**" means the post-Effective Date Debtor.

"**Schedules**" means the Schedules of Assets and Liabilities and the Statements of Financial Affairs filed by or on behalf the Debtor in its Chapter 11 Case pursuant to § 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as they have been or may hereafter be amended, modified or supplemented.

"**Secured Claim**" means a Claim, if any, that is (a) secured by a valid, perfected and enforceable Lien under applicable state law or by reason of a Final Order on property in which one or more Debtor's Estate has an interest to the extent of the value of such property, or (b) subject to a permissible setoff under § 553 of the Bankruptcy Code, to the extent of such permissible setoff, in each case, as determined in accordance with § 506(a) of the Bankruptcy Code or as otherwise agreed upon in writing by the Debtor and the Holder of such Claim.

"**Subchapter V Trustee**" means Areya Holder Aurzada, as the Subchapter V Trustee appointed in this Chapter 11 Case.

"**Tax Claim**" shall mean any Claim entitled to priority under Section 507(a)(8) of the Code and shall include the claims of taxing authorities.

"**UMB**" means UMB Bank, N.A.

"**UMB Collateral**" means the collateral that serves as security for the UMB Secured Claim and includes all Assets of the Debtor.

"**UMB Secured Claim**" means the Secured Claim of UMB in the aggregate amount of $1,214,176.42 as of the Petition Date.  The Secured Claim of UMB may be identified by the proof of claim filed by UMB as claim number 5 on the Court's claim registry.  The debt owed to UMB is secured by a Lien or Liens on the UMB Collateral.

"**Unsecured Claim**" means a Claim against the Debtor, other than Allowed Claim, whether or not liquidated or contingent other than a Priority Claim, a Tax Claim, or a Secured Claim.

All terms not expressly defined herein shall have the respective meanings given to such terms in § 101 of the Bankruptcy Code or as otherwise defined in applicable provisions of the Bankruptcy Code.  The rules of construction set forth in § 102 of the Bankruptcy Code shall apply.  Further, in computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

Unless otherwise specified herein, any reference to an individual or Entity as a Holder of a Claim or Equity Interest includes that individual's or Entity's successors, assigns and affiliates.

## ARTICLE II.
## RULES OF CONSTRUCTION AND INTERPRETATION

**2.1    Rules of Construction**.  The words "herein," "hereof" and "hereunder" and other words of similar import refer to this Plan as a whole and not to any particular article, section, subsection or clause contained in this Plan, unless the context requires otherwise. Whenever from the context it appears appropriate, each term stated in either the singular or the plural includes the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender include the masculine, feminine and the neuter.  Captions, articles, and section headings in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan. Any phrase containing the term "include" or "including" means including without limitation without the necessity of repeating same in each instance.  The rules set forth in § 102 of the Bankruptcy Code shall apply in the construction of the Plan to the extent that such rules are not inconsistent with any other provision of this Article of the Plan.

A capitalized term used in this Plan and not defined herein but that is defined in the Bankruptcy Code has the meaning assigned to the term in the Bankruptcy Code.  A capitalized term used in this Plan and not defined herein or in the Bankruptcy Code but is defined in the Bankruptcy Rules has the meaning assigned to the term in the Bankruptcy Rules.

**2.2** __Governing Law__.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Texas, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements; in which case, the governing law of such agreement shall control).

## ARTICLE III.
## BACKGROUND

**3.1** __Description and History of the Debtor's Business__.  Founded in 2013, the Debtor is a dentist office in Rockwall, Texas that specializes in bruxism treatment, root canal, gum disease treatment, tooth extraction, emergency dental care, and mouth guards.  The Debtor also offers cosmetic dental treatments including dental crowns, dental bonding, teeth whitening, and veneers. The Debtor employs five (5) staff members and two (2) doctors, including the Debtor's owner, Rashid Beirute-Prada, DDS, MDS.  Dr Beirute-Prada is a board-certified periodontist with over 22 years of experience in the medical field.

**3.2** __Description of Debtor's Main Assets__.  As identified on the Debtor's Schedules filed at Docket No. 24, the Debtor's Assets include its: (i) cash; (ii) office furniture; (iii) dental equipment and machinery; and (iii) goodwill (i.e., patient list).

**3.3** __Post-Confirmation Management__.  Pursuant to the PLLC Membership Interest Transfer Agreement (the "Transfer Agreement") and the terms of this Plan, the membership shares of the Debtor's prior owner, Dr. Beirute-Prada, shall be transferred to Prime Dental Management, LLC ("Prime Dental") immediately upon the entry of the Confirmation Order in exchange for a total purchase price of $1,350,000.00.  Attached hereto as **Exhibit A** is a true and correct copy of the Transfer Agreement.  After confirmation, Michael Richardson ("Richardson") of Prime Dental shall manage the operations of the Reorganized Debtor as its new owner.

**3.4** __Debtor's Compliance with the Code__.  The Debtor has filed this Plan in good faith. The Debtor represents that the information contained herein is true and correct to the best of its knowledge and understanding. The Debtor believes that the Plan complies with all applicable provisions of the Code. The Debtor does not believe that Subsections (a)(6), (a)(13), (a)(14), and/or (a)(15) of Section 1129 of the Code are applicable to the Debtor or the Plan. The Debtor affirmatively asserts that the Plan complies with the applicable provisions of the Code ((a)(1)), and has been proposed in good faith and not by any means forbidden by law ((a)(3)). Further, the Debtor affirmatively asserts that they have complied with the applicable provisions of the Code ((a)(2)). The Debtor affirmatively asserts that the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor ((a)(11)).

**3.5** __Liquidation Analysis__.  To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached as **Exhibit B** and shows that all creditors of the Debtor would receive payment in full of their Allowed Claims in a Chapter 7 liquidation. All Allowed Secured Claims will be paid in full under this Plan. The equity interests shall retain their ownership.

**3.6** **Ability to Make Future Plan Payments and Operate without Further Reorganization**. The Debtor must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the Debtor's business. Attached hereto as **Exhibit C** are projections of gross income, expenses and operating income for the next five (5) years (the "Projections"). It is anticipated that after confirmation, the Debtor will continue in business. Based upon the Projections, the Debtor believes it can service the debt to creditors.

**ARTICLE IV.**
**CLASSIFICATION OF CLAIMS AND INTERESTS**

Pursuant to § 1122 of the Bankruptcy Code, and for the purposes of organization, and all confirmation matters, except as otherwise provided herein, all Claims against and all Interests in the Debtor shall be classified as set forth in this Article IV.

**4.1** **Administrative Claims**. As provided in § 1123(a) of the Bankruptcy Code, Administrative Claims shall not be classified; theyare therefore excluded from the Classes of Claims and Interests set forth below.

**4.2** **Classes of Claims and Interests**. A Claim or Interest is in a particular Class onlyto the extent the Claim or Interest is an Allowed Claim or Allowed Interest. For purposes of organization, voting, and all confirmation matters, except as otherwise provided herein, all Claims(except for Administrative Claims) and Interests shall be classified as follows:

| Class | Type of Allowed Claim or Interest | Treatment |
|-------|-----------------------------------|-----------|
| 1 | Allowed Priority Tax Claim | The Holders of Allowed Priority Tax Claims include Dallas County and Rockwall CAD. <br><br> Dallas County shall receive the full amount of its priority claim of $1,715.25 plus interest in fifty-four (54) consecutive monthly payments of **$13.66**, which includes interest at the rate of 9.5%. The monthly payments shall commence thirty days after the Effective Date. <br><br> Rockwall CAD shall receive the full amount of its priority claim of $3,123.45 plus interest in fifty-four (54) consecutive monthly payments of **$24.88**, which includes interest at the rate of 9.5%. The monthly payments shall commence thirty days after the Effective Date. <br><br> Holders of Allowed Priority Tax Claims are unimpaired and not entitled to vote on the plan. |
| 2 | Allowed UMB Secured Claim | The Debtor shall pay the Holder of the UMB Secured Claim the full amount of its Secured Claim of $1,214,176.42 plus 9.5% interest in sixty (60) payments according to the below schedule: <br><br> **Year 1**: **$13,500.00** per month for twelve (12) consecutive months commencing thirty (30) days after the Effective Date. <br> **Year 2**: **$19,500.00** per month for twelve (12) consecutive months commencing thirty (30) days after the completion of the Year 1 payments. <br> **Year 3**: **$25,500.00** per month for twelve (12) consecutive months commencing thirty (30) days after the completion of the Year 2 payments. |

| | | |
|---|---|---|
| | | **Year 4**: **$31,500.00** per month for twelve (12) consecutive months commencing thirty (30) days after the completion of the Year 3 payments. **Year 5**: **$37,500.00** per month for twelve (12) consecutive months commencing thirty (30) days after the completion of the Year 4 payments. <br><br> Holders of the UMB Secured Claim is impaired and entitled to vote on the Plan. |
| 3 | Allowed General Unsecured Claims | The Debtor shall make sixty (60) consecutive monthly payments commencing thirty (30) days after the Effective Date in the amount of **$2,678.00**, which constitutes the Debtor's Disposable Income identified on the Debtor's Projections.  The Holders of Allowed Unsecured Claims shall receive their pro rata share of the monthly payment. <br><br> Holders of General Unsecured Claims are impaired and entitled to vote on the Plan. |
| 4 | Allowed Equity Interests in the Debtor | Pursuant to this Plan and the Transfer Agreement, the Equity Interests of the Debtor shall be transferred to Prime Dental in exchange for $1,350,000, which shall be paid by Prime Dental according to the Projections. <br><br> Holders of Allowed Equity Interests are deemed to have accepted the Plan and are not entitled to vote on the Plan. |

## ARTICLE V.
## TREATMENT OF UNCLASSIFIED CLAIMS

**5.1**     **Unclassified Claims.** Certain types of Claims are automatically entitled to specific treatment under the Code. For example, Administrative Expenses and Priority Tax Claims are not classified. They are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan does not place the following Claims in any class:

**5.2**     **Administrative Expense Claims.** The Debtor must pay all Administrative Expenses in full. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant or court order. If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

**5.3**     **Professional Compensation and Reimbursement Claims**. All requests for allowance and payment of Professional Fee Claims must be filed with the Bankruptcy Court and served on the Post-Confirmation Service List no later than thirty (30) days after the Effective Date. Any such Professional Fee Claim for which an application or request for payment is not filed with the Bankruptcy Court within that time period shall be released and forever barred, and shall not be entitled to Distributions under the Plan. Objections to the payment of such Professional Fee Claims must be filed no later than seven (7) days prior to the hearing on such Professional Fee Claims. Professional Fee Claims shall be paid within seven (7) days upon the entry of an Order from the Bankruptcy Court approving the professional's fees.

**5.4** **Payment of Statutory Fees and Post-Petition Date Taxes**. Notwithstanding anything herein, all fees payable pursuant to 28 U.S.C. § 1930 and all Claims of a Governmental Unit of the type described in § 503(b)(1)(B)-(C) of the Bankruptcy Code that were filed prior to the Administrative Claim Bar Date shall be treated as Allowed Administrative Expense Claims when such amounts become due and payable by the Debtor under applicable non-bankruptcy law. The dates on which those claims become due shall be their Allowance Date.

**5.5** **Payment of Subchapter V Trustee Fees.** All approved Subchapter V Trustee fees will be paid within seven (7) days of final Court approval of such fees.

## ARTICLE VI.
## TREATMENT OF CLAIMS AND EQUITY INTERESTS

**6.1** **Class 1 Claimant (Allowed Priority Tax Claim)** is unimpaired and shall be satisfied as follows:  Dallas County shall receive the full amount of its priority claim of $1,715.25 plus interest in fifty-four (54) consecutive monthly payments of **$13.66**, which includes interest at the rate of 9.5%.  The monthly payments shall commence thirty days after the Effective Date. Rockwall CAD shall receive the full amount of its priority claim of $3,123.45 plus interest in fifty-four (54) consecutive monthly payments of **$24.88**, which includes interest at the rate of 9.5%. The monthly payments shall commence thirty days after the Effective Date.

Notwithstanding anything in the Plan to the contrary, the Plan shall not release or discharge any entity, other than the Debtor or Reorganized Debtor, from any liability owed to the Holders of Allowed Priority Tax Claims for a tax debt, including interest and penalties on such tax.  This provision is not admission by any party that such liability exists. Notwithstanding anything in the Plan to the contrary, the Plan shall not limit the Holders of Allowed Priority Tax Claims' setoff rights under 11 U.S.C. § 553.  This provision is not admission by any party that such setoff rights exist.

A failure by the Reorganized Debtor to make a payment to the Holders of Allowed Priority Tax Claims pursuant to the terms of the Plan shall be an Event of Default.  If the Reorganized Debtor fail to cure an Event of Default as to tax payments within ten (10) calendar days after service of written notice of default from the Holder of Allowed Priority Tax Claim, the Holder of Allowed Priority Tax Claim may (a) enforce the entire amount of its claim, (b) exercise all rights and remedies under applicable nonbankruptcy law, and (c) seek such relief as may be appropriate in this court.  Notice of the default shall be served by first class mail upon the Reorganized Debtor: 6705 Heritage Pkwy, #100, Rockwall, TX 75087, Attn: Rashid Beirute-Prada, DDS, MDS, and upon Debtor's attorney at: Tittle Law Firm, PLLC, 1125 Legacy Dr., Ste. 230, Frisco, Texas 75034, Attn: Brandon John Tittle, Esq.  The Notice of default shall also be served via email to drprada@lakesidedentalsolutions.com and btittle@tittlelawgroup.com.

The Class 1 Claimants are unimpaired and are not entitled to vote.

**6.2** **Class 2 Claimant (Allowed UMB Secured Claim)** is impaired and shall be satisfied as follows:  As of the date of this Plan, the Debtor believes the amount due to UMB on behalf of its UMB Secured Claim is $1,214,176.42.  The Debtor shall pay the Holder of the UMB Secured Claim sixty (60) payments according to the below schedule, which includes interest at

9.5% per annum:

> **Year 1**: **$13,500.00** per month for twelve (12) consecutive months commencing thirty (30) days after the Effective Date.

> **Year 2**: **$19,500.00** per month for twelve (12) consecutive months commencing thirty (30) days after the completion of the Year 1 payments.

> **Year 3**: **$25,500.00** per month for twelve (12) consecutive months commencing thirty (30) days after the completion of the Year 2 payments.

> **Year 4**: **$31,500.00** per month for twelve (12) consecutive months commencing thirty (30) days after the completion of the Year 3 payments.

> **Year 5**: **$37,500.00** per month for twelve (12) consecutive months commencing thirty (30) days after the completion of the Year 4 payments.

The Reorganized Debtor shall comply with all reporting requirements set forth in UMB's prepetition loan documents.

Until the Debtor pays in full its obligations to UMB pursuant to this Plan, the prepetition liens granted to UMB shall remain in full force and effect. Upon completion of the plan payments, the prepetition liens granted to UMB shall be deemed extinguished.

A failure by the Reorganized Debtor to make a payment to UMB pursuant to the terms of the Plan shall be an Event of Default. If the Reorganized Debtor fails to cure an Event of Default as to monthly payments within thirty (30) calendar days after service of written notice of default from UMB, may (a) enforce the entire amount of its claim, (b) impose a default interest rate as set forth in the prepetition loan documents, (c) exercise all rights and remedies under applicable nonbankruptcy law, and (d) seek such relief as may be appropriate in this court. Notice of the default shall be served by first class mail upon the Reorganized Debtor: 6705 Heritage Pkwy, #100, Rockwall, TX 75087, Attn: Rashid Beirute-Prada, DDS, MDS, and upon Debtor's attorney at: Tittle Law Firm, PLLC, 1125 Legacy Dr., Ste. 230, Frisco, Texas 75034, Attn: Brandon John Tittle, Esq. The Notice of default shall also be served via email to drprada@lakesidedentalsolutions.com and btittle@tittlelawgroup.com.

The Reorganized Debtor shall be allowed to cure up to two (2) defaults. If the Reorganized Debtor does not timely cure, or upon a third default, the automatic stay (if in effect), and the injunction described in Section 11.3 shall terminate as to UMB and the Reorganized Debtor's personal property and UMB would be authorized to pursue all of its state law remedies without further notice or order of the Court.

The Class 2 Claimant is impaired and entitled to vote on the Plan.

**6.3    Class 3 Claimants (Allowed Unsecured Claims)** are impaired and shall be satisfied as follows: In the event the Plan is a consensual plan pursuant to Sections 1191(a) and 1129(a), the Debtor shall make sixty (60) consecutive monthly payments commencing thirty (30) days after the Effective Date in the amount of **$2,678** (the "Monthly Payment"), which amount

equals the Debtor's Disposable Income identified on the Debtor's Projections. The Holders of Allowed Unsecured Claims shall receive their pro rata share of the Monthly Payment.

In the event the Plan is a nonconsensual plan under Section 1191(b), the Debtor shall make sixty (60) consecutive monthly payments commencing thirty (30) days after the Effective Date in the amount of the Monthly Payment, which amount equals the Debtor's Disposable Income identified on the Debtor's Projections. The Holders of Allowed Unsecured Claims shall receive their pro rata share of the Monthly Payment.

A failure by the Reorganized Debtor to make a payment to the Holders of Allowed Unsecured Claims pursuant to the terms of the Plan shall be an Event of Default. If the Reorganized Debtor fails to cure an Event of Default within ten (10) calendar days after service of written notice of default from the Holder of Allowed Unsecured Claim, the Holder of Allowed Unsecured Claim may (a) enforce the entire amount of its claim, (b) exercise all rights and remedies under applicable nonbankruptcy law, and (c) seek such relief as may be appropriate in this court. Notice of the default shall be served by first class mail upon the Debtor: 6705 Heritage Pkwy, #100, Rockwall, TX 75087, Attn: Rashid Beirute-Prada, DDS, MDS, and upon Debtor's attorney at: Tittle Law Firm, PLLC, 1125 Legacy Dr., Ste. 230, Frisco, Texas 75034, Attn: Brandon John Tittle, Esq. The Notice of default shall also be served via email to drprada@lakesidedentalsolutions.com and btittle@tittlelawgroup.com.

The Reorganized Debtor shall be allowed to cure up to two (2) defaults. Upon a third default, the Holder of the Allowed Unsecured Claim at its option, may declare the default non-cureable and proceed to collect the remainder of the debt under state law.

The Class 3 Claimants are impaired and entitled to vote on the Plan.

**6.4** **Class 4 (Current Owner)** is unimpaired under the Plan and shall be satisfied as follows: The Equity Interests of the Debtor shall be transferred to Prime Dental in exchange for $1,350,000 that shall be paid by Prime Dental according to the Projections.

The Class 4 Claimant is unimpaired and is not entitled to vote on the Plan.

### ARTICLE VII.
### MEANS FOR IMPLEMENTATION OF THE PLAN

**7.1** **Debtor, and Continued Operations**. From and after the Effective Date, the Debtor will continue to exist as a Reorganized Debtor. By reducing the Debtor's monthly obligations to creditors to the Reorganized Debtor's Disposable Income, the Reorganized Debtor will have sufficient cash to maintain operations and will allow the Reorganized Debtor to successfully operate following the Effective Date of the Plan.

**7.2** **Operations Between the Confirmation Date and Effective Date**. During the period from the Confirmation Date through and until the Effective Date, the Debtor shall continue to operate its business as a debtor-in-possession, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules, and all orders of the Bankruptcy Court that are then in full force and effect. In addition, the Debtor may take all actions as may be necessary or appropriate to implement the terms and conditions of the Plan. Upon Confirmation

of the Plan, all actions required of the Debtor to effectuate the Plan shall be deemed authorized and approved in all respects.

**7.3** **Payments by Disbursing Agent.**  If the Plan is confirmed under section 1191(a), payments to Holders of Allowed Claims in Classes 1 through 3 of the Plan will be made by the Debtor.

If the Plan is confirmed under section 1191(b), the Debtor proposes that the Debtor as the disbursing agent.  There is cause to have Prime Dental serve as the disbursing agent instead of the Subchapter V Trustee, because the costs of utilizing the services of the Subchapter V Trustee would be expensive.

**7.4** **Post-Confirmation Management.**  The Post Confirmation member of the Debtor is Prime Dental, which will manage the operations of the Reorganized Debtor.

**7.5** **Post-Effective Date Plan Implementation.**  On and after the Effective Date, the Reorganized Debtor is authorized to and may issue, execute, deliver, File, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, in the name of and on behalf of the Reorganized Debtor, without the need for any approvals, authorization or consents except those expressly required pursuant to the Plan.

**7.6** **Exemption from Certain Taxes and Fees.**  Pursuant to § 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct and be deemed to direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.  Such exemption specifically applies, without limitation, to (i) the creation of any mortgage, deed-of-trust, lien, or other security interest, (ii) the making or assignment of any lease or sublease, (iii) any restructuring transaction authorized by the Plan, or (iv) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including: (a) any merger agreements; (b) agreements of consolidation, restructuring, disposition, liquidation, or dissolution; (c) deeds; (d) bills of sale; or (e) assignments executed in connection with any restructuring transaction occurring under the Plan.

**7.7** **Settlement of Claims and Controversies.**  Pursuant to § 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for all Distributions under the Plan and other benefits provided under this Plan, the provisions of this Plan shall constitute a good-faith compromise and settlement of all Claims and controversies relating to the rights that a Holder of a Claim or Interest may have with respect to such Claim or Interest or any Distribution under the Plan on account of thereof.  If the Confirmation Order is not entered or the Effective Date does not occur, the Debtor reserves its rights with respect to all disputes resolved and settled under this Plan.  Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, as of the Effective Date, of each compromise and settlement embodied in the Plan, and the Bankruptcy Court's finding that all such compromises and settlements are (a) in the Debtor's and Estate's best

interests and (b) fair, equitable and within the range of reasonableness.  The provisions of the Plan, including, without limitation, its release, injunction, exculpation, and compromise provisions are mutually dependent.

**7.8**   **Vesting of Property of the Estate**.  If a plan is confirmed under § 1191(a), except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors, equity security holders, and of general partners in the Debtor.

If a plan is confirmed under § 1191(b), property of the estate includes, in addition to the property specified in § 541, all property of the kind specified in that section that the Debtor acquires, as well as earnings from services performed by the Debtor, after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of the Bankruptcy Code, whichever occurs first. Except as provided in § 1185 of the Bankruptcy Code, the Plan, or the order confirming the Plan, the Debtor shall remain in possession of all property of the estate.

**7.9**   **Retention of Causes of Action.**  Pursuant to § 1123(b) of the Bankruptcy Code, all Causes of Action (including but not limited to, all Avoidance Actions), are hereby preserved by this Plan, notwithstanding the occurrence of the Effective Date.  Following the Effective Date and the vesting of the Causes of Action with the Reorganized Debtor, the Reorganized Debtor shall retain the exclusive authority and all rights to enforce, commence, and pursue, as appropriate, any and all Causes of Action whether arising before or after the Petition Date, and the Reorganized Debtor's rights to commence, prosecute, settle, or otherwise dispose of such Causes of Action shall be preserved.  Upon the Effective Date, and in accordance with the terms and conditions of this Plan, the Reorganized Debtor shall have all requisite standing and authority to administer the Causes of Action.

## ARTICLE VIII.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**8.1**   **Assumption of Executory Contracts and Unexpired Leases**.   Except as otherwise provided herein or in any order of the Bankruptcy Court, on the Effective Date every Executory Contract identified on the attached Schedule of Assumed Executory Contracts shall be deemed Assumed upon the payment of the cure amount identified in that Schedule.   The Debtor/Reorganized Debtor reserves the right to modify the treatment of an Executory Contract pursuant to this Plan.  If a contract party objects to the treatment proposed in the Schedule of Assumed Executory Contracts, it must file an objection to this Plan or otherwise waives its right to object and shall be deemed to have consented to the assumption as proposed herein.  Each Executory Contract on the Schedule of Assumed Executory Contracts shall be assumed only to the extent that it constitutes an executory contract or unexpired lease as contemplated by § 365 of the Bankruptcy Code.  Nothing contained in this Plan constitutes an admission by the Debtor that any such contracts or leases are "executory" or that the Debtor has any liability thereunder.  Further, such assumption is subject to the same rights that the Debtor held or holds on or after the Petition Date to modify or terminate such agreement(s) under applicable non-bankruptcy law.  Each Executory Contract assumed pursuant to this section shall be fully enforceable by the Reorganized

Debtor in accordance with its terms, except as modified by the provisions of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption or applicable federal law.

**8.2**    **Payments Related to Assumption of Executory Contracts**.  If not the subject of *bona-fide* dispute pursuant to this Article as of Confirmation, monetary defaults, if any, under each Executory Contract to be assumed under the Plan shall be satisfied by the Reorganized Debtor pursuant to § 365(b)(1) by payment in Cash of the amount set forth in the Cure Amounts identified on the Schedule of Assumed Executory Contracts or such other amount as ordered by the Bankruptcy Court or agreed to by the parties on or as soon after the Effective Date as practicable or on such other terms as agreed to by the parties to such Executory Contract. In the event of a *bona-fide* dispute pursuant to this Article, payment of the amount otherwise payable hereunder shall be made following entry of a Final Order or agreement by the Debtor and the party to the Executory Contract.

**8.3**    **Claims Based on Rejection of Executory Contracts of Unexpired Leases**.  Any Claim for damages arising from the rejection of an executory contract or unexpired lease pursuant to the Plan must be asserted in a proof of Claim filed with the Bankruptcy Court not later than thirty (30) days after the date on which the Executory Contract was rejected or deemed rejected. The Claimant shall have either a Class 3 General Unsecured Claim payable in accordance with the terms and conditions of this Plan.  Any such rejection Claims not timely filed shall be released and forever barred from payment pursuant to this Plan.  Any other bar date previously established for the filing of Claims based on the rejection of executory contracts or unexpired leases shall not be affected by this provision.

## ARTICLE IX.
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

**9.1**    **Objections to Claims**.  Following the Effective Date, an objection to the allowance of any Claim shall be in writing and filed by the Reorganized Debtor.  Any Disputed Claim as to which an objection is not filed on or before the Claims Objection Deadline shall be deemed to constitute an Allowed Claim under the Plan following the Claims Objection Deadline.

**9.1.1**    Alternative Standing.  Notwithstanding the foregoing, any party in interest that otherwise would have standing to object to a Claim absent the provisions of this Plan, may, on or before the Claims Objection Deadline, file a motion with the Bankruptcy Court requesting standing to so object on the basis that an advance, written demand has been made by the movant on the Reorganized Debtor to object to the Claim, and that said Reorganized Debtor has unjustifiably refused or failed to respond.  Any such motion filed by the Claims Objection Deadline shall, if granted, toll the Claims Objection Deadline solely with respect to the Claim which is the subject of the motion, until and including the date which is ten (10) business days following the date of entry of the Bankruptcy Court's order on the motion.

**9.2**    **Contingent Claims**.  Until a Contingent Claim becomes an Allowed Claim or is Disallowed, the Claim will be treated as a Disputed Claim for all purposes under the Plan.  The Holder of a Contingent Claim will be entitled to a Distribution under the Plan only when the Contingent Claim becomes an Allowed Claim.  Any Contingent Claim for reimbursement or

contribution held by a Person that may be liable with the Debtor on a Claim of a Claimant is Disallowed as of the Effective Date if: (a) that Claimant's Claim is Disallowed; (b) the Claim for reimbursement or contribution is contingent as of the Effective Date; or (c) that Person asserts a right of subrogation to the rights of the Claimant under § 509 of the Bankruptcy Code.

**9.3** **Post-Confirmation Proofs of Claim and Amendments**. Except as otherwise expressly contemplated by the Plan, following the later of the Effective Date and the applicable Bar Date, no original or amended proof of Claim may be filed in the Chapter 11 Cases to assert a Claim against the Debtor or its Estate without prior authorization of the Bankruptcy Court, and any such proof of Claim that is filed without such authorization shall be deemed null, void and of no force or effect; *provided*, *however*, that the Holder of a Claim that has been evidenced in the Chapter 11 Cases by the filing of a proof of Claim on or before the Bar Date shall be permitted to file an amended proof of Claim in relation to such Claim at any time if the sole purpose of the amendment is to reduce the amount of the Claim asserted.

**9.4** **Settlement of Disputed Claims**. From and after the Effective Date, pursuant to Bankruptcy Rule 9019(b) and § 105(a) of the Bankruptcy Code, the Reorganized Debtor shall be entitled to compromise and settle objections to Disputed Claims as set forth below:

**9.4.1** Amount in Controversy Less than $100,000. If the amount in controversy of a Disputed Claim is less than $100,000.00, the Reorganized Debtor will be authorized and empowered to settle its objection to such Disputed Claim and execute the necessary documents, including a stipulation of settlement or release, with no further approval of or notice to the Bankruptcy Court.

**9.4.2** Amount in Controversy Greater than $100,000. If the amount in controversy of a Disputed Claim is greater than $100,000.00, the Reorganized Debtor shall be authorized and empowered to settle its objection to such Disputed Claim, and execute the necessary documents, including a stipulation of settlement or release, upon fourteen (14) days' notice filed with the Bankruptcy Court. If no objection to the proposed settlement of the Disputed Claim is filed within that fourteen-day time period or if any objecting party withdraws its objection to such settlement for any reason, the Reorganized Debtor may enter into the proposed settlement without further notice, and without the necessity of a motion hearing or order of the Bankruptcy Court. If a party objects to the proposed settlement and the proponent is unable to resolve the objection, the Bankruptcy Court shall set the matter for hearing applying the settlement guidelines of Bankruptcy Rule 9019 and, following the hearing, shall enter an Order resolving the dispute.

**ARTICLE X.**
**CONDITIONS PRECEDENT**

**10.1** **Conditions Precedent to Confirmation**. Confirmation of the Plan shall occur upon the satisfaction of the following conditions: (a) the Clerk of the Bankruptcy Court shall have entered an order or orders (i) confirming and giving effect to the terms and provisions of the Plan, (ii) determining that all applicable tests, standards, and burdens in connection with the Plan have been duly satisfied and met by the Debtor and the Plan, (iii) approving the Plan Documents, and (iv) authorizing the Debtor to execute, enter into, and deliver the Plan Documents and to execute, implement, and to take all actions otherwise necessary or appropriate to give effect to the

transactions and transfer of assets contemplated by the Plan and the Plan Documents.

**10.2   Conditions Precedent to the Effective Date**. The Effective Date shall occur upon the satisfaction of the following conditions: (a) the Bankruptcy Court has approved the Plan and entered the Confirmation Order, the Confirmation Order has become a Final Order, and it authorizes the Debtor, and Reorganized Debtor to take all actions necessary or appropriate to implement and consummate the provisions of and transactions described in or contemplated in the Plan; (b) all documents effectuating the Plan and the transactions hereunder have been executed and delivered by the parties thereto, and all conditions to the effectiveness of such documents have been satisfied or waived as provided therein.

## ARTICLE XI.
## EFFECTS OF CONFIRMATION

**11.1   Binding Effect**. Except as otherwise provided in § 1141(d)(3) of the Bankruptcy Code, and subject to the occurrence of the Effective Date, on and after entry of the Confirmation Order, the provisions of this Plan shall bind every Holder of a Claim against or Interest in the Debtor and inure to the benefit of and be binding on such Holder's respective successors and assigns, regardless of whether the Claim or Interest of such Holder is impaired under this Plan and whether such Holder has accepted the Plan.

**11.2   Discharge**. If the Plan is confirmed under § 1191(a), on the Confirmation Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d) of the Bankruptcy Code; or

If the Plan is confirmed under § 1191(b), as soon as practicable after completion by the Debtor of all payments due under the Plan, unless the court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the court shall grant the Debtor a discharge of all debts provided in section 1141(d)(1)(A) of this title, and all other debts allowed under section 503 of this title and provided for in this Plan, except any debt—

(1) on which the last payment is due after the first 3 years of the plan, or such other time not to exceed 5 years fixed by the court; or

(2) if applicable, of the kind specified in section 523(a) of this title.

**11.3   Injunction**.  Except as otherwise provided in the Plan or the Confirmation Order, during the duration of the Plan, all Persons, Entities, Holders of Claims, and Holders of Equity Interests against and in the Debtor are restrained and enjoined from taking any of the following actions against the Assets and the Reorganized Debtor (collectively the **"Injunction Beneficiaries"**) on account of any such Claims or Equity Interests: (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim, or Equity Interest against the Injunction Beneficiaries, other than to enforce any right to a Distribution pursuant to the Plan; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against the Injunction Beneficiaries; (iii) creating, perfecting, or enforcing any encumbrance, security interest, or Lien of any kind against the

Injunction Beneficiaries; and (iv) asserting any right of setoff, subrogation, or recoupment of any kind against (*x*) any obligation due the Debtor, (*y*) the Assets, or (*z*) the Injunction Beneficiaries. If allowed by the Bankruptcy Court, any Injunction Beneficiary injured by any willful violation of such injunction shall recover actual damages, including, without limitation, costs and attorneys' and experts' fees and disbursements and, in appropriate circumstances, may recover punitive damages.  Unless otherwise provided in the Plan or the Confirmation Order, all injunctions or stays imposed by the Bankruptcy Code under §§ 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date, shall remain in full force and effect with respect to the Debtor until the Effective Date.  For the avoidance of doubt, no release, exculpation, or injunctions shall be granted in contravention of section 524(e) of the Bankruptcy Code or Fifth Circuit authority, including *Bank of N.Y. Trust Co. v. Off'l Unsecured Creditors' Comm. (In re Pacific Lumber Co.)*, 584 F.3d 229 (5th Cir. 2009).

**11.4**   **Insurance**.  Except as otherwise expressly provided in this Plan, confirmation and consummation of the Plan shall have no effect on insurance policies of the Debtor in which the Debtor is or was the insured party, unless the Reorganized Debtor rejects or otherwise terminates any insurance policy.  Each insurance company is prohibited from – and the Confirmation Order shall include an injunction against – denying, refusing, altering, or delaying coverage on any basis regarding or related to the Chapter 11 Case or the Plan, unless said policy is rejected or otherwise terminated hereunder.

## ARTICLE XII.
## RETENTION OF JURISDICTION

**12.1**   **Retention of Jurisdiction**.  Notwithstanding entry of the Confirmation Order, or the entry of a final decree, with respect to the Chapter 11 Case, or any of them, the Bankruptcy Court shall retain jurisdiction from and after the Effective Date, to the fullest extent legally permitted, over the Chapter 11 Case, all proceedings arising under, arising in or related to the Chapter 11 Case, the Confirmation Order and the Plan including, without limitation, jurisdiction to:

**12.1.1**   Determine (a) any Disputed Claims, and all related Claims remaining in controversy or otherwise Disputed after the Confirmation Date including rights and liabilities under contracts giving rise to such Claims, (b) the validity, extent, priority, and avoidability and nonavoidability of consensual and nonconsensual Liens and other encumbrances, (c) pre-confirmation tax liability pursuant to § 505 of the Bankruptcy Code, and (d) controversies and disputes regarding the interpretation of the Plan and documents executed in connection therewith;

**12.1.2**   Allow, disallow, estimate, liquidate or determine any Claim or Equity Interest against or in the Debtor and to enter or enforce any Order requiring the filing of any such Claim or Equity Interest before a particular date;

**12.1.3**   Determine / Approve all matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease of the Debtor pursuant to § 365 of the Bankruptcy Code and the Plan;

**12.1.4**   Determine any request for payment of a potential Administrative Claim,

including compensation of parties entitled thereto, or fees and reimbursements to the Debtor;

**12.1.5** Resolve controversies and disputes regarding the interpretation and implementation of the Plan, any disputes relating to whether or not a timely and proper proof of Claim was filed or whether a Disallowed Claim should be reinstated;

**12.1.6** Implement the provisions of the Plan and enter Orders and injunctions in aid of confirmation and consummation of the Plan, including any disputes concerning the enforceability or applicability of the releases and injunctions contained herein;

**12.1.7** Issue injunctions, enter and implement other orders and take such other actions as may be necessary or appropriate to execute, interpret, implement, consummate, or enforce the terms and conditions of the Plan (including all exculpations and injunctions), any Plan Document, or any transaction contemplated under any of the foregoing, the Confirmation Order, or any other order of the Bankruptcy Court, or to maintain the integrity of the Plan following confirmation;

**12.1.8** Determine issues relating to the garnishment of any Distributions payable under the terms of the Plan;

**12.1.9** Modify the Plan pursuant to § 1127 of the Bankruptcy Code;

**12.1.10** Preside over and adjudicate any and all Causes of Action that arose prior to the Confirmation Date or in connection with the implementation of the Plan, whether or not pending on the Confirmation Date;

**12.1.11** Resolve disputes concerning any reserves with respect to Disputed Claims or the administration thereof;

**12.1.12** Resolve any disputes concerning whether a person or entity had sufficient notice of the Chapter 11 Cases, any applicable Bar Date, or the Confirmation Hearing for the purpose of determining whether a Claim or Equity Interest is barred hereunder or for any other purpose;

**12.1.13** Preside over and determine any and all applications, claims, pending adversary proceedings, and contested matters (including, without limitation, any adversary proceeding or other proceeding to recharacterize agreements or reclassify Claims or Equity Interests) in the Chapter 11 Case;

**12.1.14** Enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

**12.1.15** Seek the issuance of such orders in aid of execution of the Plan, to the extent authorized by § 1142 of the Bankruptcy Code;

**12.1.16** Consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without

limitation, the Confirmation Order;

**12.1.17** Recover all assets of the Debtor and property of the Estate, wherever located;

**12.1.18** Resolve matters concerning state, local, and federal taxes in accordance with §§ 346, 505, and 1146 of the Bankruptcy Code;

**12.1.19** Hear any other matter not inconsistent with the Bankruptcy Code;

**12.1.20** Resolve any and all disputes or controversies relating to Distributions to be made, and/or reserves or escrows to be established, under the Plan;

**12.1.21** Enforce any injunctions granted under the Plan;

**12.1.22** Approve settlements relating to any of the above;

**12.1.23** Determine any and all motions, applications, adversary proceedings, contested or litigated matters, including Causes of Action initiated by, against, or otherwise involving the Debtor.

**12.1.24** Hear and determine all matters necessary to enforce the rights, remedies, and obligations reserved for the Debtor, the Plan Documents, or the Confirmation Order, including interpreting any provision of any of the foregoing; and

**12.1.25** Enter a final decree and order concluding, closing, or terminating the Chapter 11 Case.

**12.2** <u>**Limitation on Jurisdiction and Authority**</u>.  In no event shall the provisions of this Plan be deemed to confer in the Bankruptcy Court jurisdiction greater than that established by the provisions of 28 U.S.C. §§ 157 and 1334 or authority to enter final judgments beyond that provided by applicable law, including the Constitution of the United States.

**12.3** <u>**No New Requirements**</u>.  The grant of jurisdiction to the Bankruptcy Court herein over a matter or issue does not mean that Bankruptcy Court approval is required for such matters or issues, nor does it otherwise affect the substantive legal requirements or the requirements in any agreement pertaining to such matters or issues.

### ARTICLE XIII.
### MISCELLANEOUS PROVISIONS

**13.1** <u>**Authorization**</u>.  The Debtor, and the Reorganized Debtor after the Effective Date, shall be authorized to perform all reasonable, necessary and authorized acts to consummate the terms and conditions of the Plan.

**13.2** <u>**Amendment of the Plan**</u>.  The Proponent reserves the right, in accordance with the Bankruptcy Code, to amend or modify the Plan prior to the Confirmation Date.  After the Effective Date, the Reorganized Debtor may, on order of the Bankruptcy Court, amend or modify the Plan

in accordance with § 1193 of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purposes and intent of the Plan.

**13.3** **Non-Confirmation of the Plan**. The Proponents reserve the right to withdraw this Plan at any time prior to the Confirmation Date. If the Proponent withdraws this Plan prior to the Confirmation Date, or if the Confirmation Date or the Effective Date does not occur, then this Plan shall be deemed null and void. In such event, nothing contained in this Plan shall be deemed to constitute an admission of any liability or of the viability of any defense to liability on the part of the Debtor, the Estate, or any other Person.

**13.4** **Filing of Additional Documentation**. On or before the Effective Date, the Proponent may file with the Bankruptcy Court such agreements and other documents as may be reasonably necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

**13.5** **Governing Law**. Except to the extent the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of the State of Texas, without giving effect to the principles of conflicts of law thereof.

**13.6** **Headings**. Each heading preceding an article, section or paragraph of the Plan is inserted for convenience only and shall not affect interpretation or construction of the Plan.

**13.7** **Severability**. Should any term or provision of the Plan be determined by the Bankruptcy Court to be invalid, void or unenforceable, such determination shall in no way limit or affect the enforceability or operative effect of any other provision of the Plan. If any term or provision of the Plan is of such a character as to deny Confirmation, the Proponents reserve the right to strike such provisions from the Plan and seek Confirmation of the Plan as modified. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**13.8** **All Claims and Equity Interests**. The Plan is intended to deal with all Claims of whatever character whether or not Disputed, contingent, or liquidated and whether or not Allowed by the Bankruptcy Court under § 502 of the Bankruptcy Code against and Equity Interests in the Debtor. However, only those Claims and Equity Interests Allowed shall be entitled to receive the treatment afforded by the Plan.

**13.9** **Computation of Time**. In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006 shall apply unless otherwise set forth in the Plan or determined by the Bankruptcy Court.

**13.10** **Section 1125(e) Good-Faith Compliance**. The Proponents and their respective representatives and professionals shall be deemed to have acted in "good faith" under § 1125(e)

of the Bankruptcy Code.

     **13.11**  <u>**Notices**</u>.  Any notice required to be given under this Plan shall be in writing and, except for a notice of change of address, shall be considered complete on the earlier of: (a) three (3) days following the date the notice is sent by United States mail, postage prepaid, or by overnight courier service, or in the case of mailing to a non-United States address, air mail, postage prepaid, or personally delivered; (b) the date the notice is actually received by the Entities on the Post-Confirmation Service List by facsimile or computer transmission; or (c) three (3) days following the date the notice is sent to those Entities on the Post-Confirmation Service List as such Service List is adopted by the Bankruptcy Court at the hearing on confirmation of the Plan, as such list may be amended from time-to-time by written notice from the Persons on the Post-Confirmation Service List.  Unless and until otherwise directed, any pleading, notice or other document required or permitted by the Plan to be served on or delivered to the Debtor, or, if after the Effective Date, the Reorganized Debtor and the U.S. Trustee, as the case may be, shall be sent by U.S. first class mail, postage prepaid, to:

| <u>Debtor</u>:                    | <u>With copies to</u>:          |
|-----------------------------------|---------------------------------|
| Uptown Dental Solutions PLLC      | Brandon J. Tittle               |
| d/b/a Lakeside Dental Solutions   | Tittle Law Firm, PLLC           |
|                                   | 1125 Legacy Dr., Ste. 230       |
|                                   | Frisco, Texas 75034             |
|                                   |                                 |
| <u>Subchapter V Trustee</u>:      | Areya Holder Aurzada - SBRA V   |
|                                   | Holder Law                      |
|                                   | P.O. Box 2105                   |
|                                   | Addison, TX 75001               |
|                                   |                                 |
| <u>United States Trustee</u>:     | Office of the U.S. Trustee      |
|                                   | Attn: Elizabeth A. Young        |
|                                   | 1100 Commerce Street, Room 976  |
|                                   | Dallas, TX 75202                |

     **13.12**  <u>**Confirmation Order.**</u>  The Confirmation Order shall provide that unless expressly provided therein or by incorporation of this Plan, the Confirmation Order does not modify, alter or supersede any order of the Bankruptcy Court entered in the Bankruptcy Case.

Dated: April 30, 2025.                                Respectfully submitted by:


                                                      By:*/s/ Brandon J. Tittle*
                                                      Brandon J. Tittle
                                                      Texas Bar No. 24090436
                                                      **TITTLE LAW FIRM, PLLC**
                                                      1125 Legacy Dr., Ste. 230
                                                      Frisco, Texas 75034
                                                      Telephone: 972.213.2316
                                                      Email: btittle@tittlelawgroup.com

                                                      **COUNSEL FOR DEBTOR
                                                      AND DEBTOR-IN-POSSESSION**

# EXHIBIT A

**PLLC Membership Transfer Agreement**

**Uptown Dental Solutions, PLLC d/b/a Lakeside Dental Solutions**

**PLLC Membership Interest Transfer Agreement**

**Term Sheet**

**Dated April 29, 2025**

| | |
|---|---|
| **Seller:** | Rashid Beirute-Prada |
| **Buyer:** | Prime Dental Management, LLC or SPE Affiliate |
| **Purchase and Sale of Membership:** | Subject to the terms and conditions hereof, Seller hereby sells, assigns and transfers to the Buyer, one hundred percent (100%) of Seller's right, title and interest in and to or otherwise connected with his membership shares (the "Transferred Membership Interests") in Uptown Dental Solutions, PLLC d/b/a Lakeside Dental Solutions (the "Debtor"), free and clear of any and all liens, encumbrances, security agreements, pledges, hypothecations, equities, options, rights, claims, charges or restrictions or interests of any kind (collectively, "Encumbrances"), in consideration for the payment by the Buyer of the Purchase Price (defined below). |
| **Purchase Price:** | The Buyer agrees to acquire the Transferred Membership Interests of the Buyer for a total purchase price of **$1,350,000.00** (the "Purchase Price") to be paid as follows:<br><br>(a) Buyer shall pay **$250,000.00** ("Initial Payment") to the post-confirmation Debtor (the "Reorganized Debtor") within ten (10) business days following an Order approving the Debtor's *First Amended Chapter 11 Plan of Reorganization* (the "Plan").<br><br>(b) The remaining portion of **$1,100,000.00** (the "Remaining Payments") shall be made available for use by the Reorganized Debtor to ensure that the Debtor makes all Plan payments pursuant to the five-year projections (the "Five-Year Projections"), which are attached to the Plan, and are attached hereto as **Exhibit A**. In the event the Reorganized Debtor wishes to prepay any of the Plan payments identified on the Five-Year Projections, the Seller and Buyer must both consent in writing. |
| **Use of Proceeds** | The proceeds from the Initial Payment shall first be used to pay all administrative expenses of the Debtor with all remaining proceeds to be used to pay post-confirmation operating expenses of the Reorganized Debtor, as identified on the Five-Year Projections.<br><br>The proceeds from the Remaining Payments shall solely be used to pay post-confirmation operating expenses of the Reorganized Debtor to ensure that the Reorganized Debtor satisfies all Plan |

1

| | payments identified on the Five-Year Projections ("<u>Plan Payments</u>").<br><br>**<u>For the avoidance of doubt, Buyer's capital contribution into the Reorganized Debtor will be limited to the Purchase Price. After the Purchase Price has been fully utilized, Seller shall be fully responsible for inserting the funds needed to maintain operations and make all Plan Payments, either through the Seller's Profit Allocation or personal assets. Seller's obligation to maintain positive cash flow shall terminate upon the earlier of: (i) the completion of the Plan Payments; or (ii) the end of the five-year period in the 5-Year Projections.</u>** |
|---|---|
| **Closing Date:** | The tenth business day following the entry of an Order confirming the Plan by the U.S. Bankruptcy Court for the Northern District of Texas. |
| **Profit Allocation:** | (a) Seller shall receive a profits interest related to his employment of 12.5% once the Reorganized Debtor achieves $1.75MM in annualized collections for at least 3 months in a row. The Profit Allocation shall increase to 15.0% once the Reorganized Debtor achieves annualized collections of $2.0MM in annualized collections for at least 3 months in a row. The Profit Allocation shall increase to 20.0% once the Reorganized Debtor achieves annualized collections of $2.25MM in annualized collections for at least 3 months in a row.<br><br>(b) Profit Allocation may be converted into equity in the Reorganized Debtor of an equal percentage after the earlier of (i) eighteen (18) months of employment; or (ii) once the Reorganized Debtor achieves annualized collections of $2.0MM in annualized collections for at least 3 months in a row.<br><br>(c) So long as the Profit Allocation is in place and equal to or less than 15.0%, Seller shall receive a 5% transaction fee at the capital event as part of his employment on net proceeds after transaction costs and debt repayment.<br><br>(d) The Profit Allocation shall also apply to the net proceeds from the capital event after transaction costs and debt service. |
| **Management and Control:** | On the Effective Date of the Plan, the Buyer shall obtain full management and control of the Reorganized Debtor and shall comply with all requirements in the Plan, including making all Plan Payments. The Buyer shall be deemed the Plan Administrator of the Plan. |
| **Employment Agreement:** | On the Effective Date, Seller shall be awarded an employment agreement with the Reorganized Debtor for a period of two (2) years during which time Seller shall receive thirty-five percent |

| | |
|---|---|
| | (35%) of all collections from invoices billed for Seller's services. During the period of the employment agreement, Seller may only be terminated for cause. |
| **Conditions Precedent to Closing:** | The following conditions must be met at Closing:<br><br>(a) The Plan shall be in form and substance satisfactory to the Buyer in its sole and absolute discretion.<br><br>(b) The representations and warranties of the Seller shall be true and correct immediately prior to Closing, provided that such representations and warranties shall be made only as to circumstances existing as of the Closing Date and shall be further modified as described below under "Effect of Bankruptcy Filing." |
| **Conditions Precedent to Transferred Membership Interests** | On the Closing Date, the following conditions precedent shall have been satisfied:<br><br>(a) There shall exist no default under the terms of the Plan.<br><br>(b) The representations and warranties of the Seller shall be true and correct immediately prior to, and after giving effect to, such funding or issuance, as applicable, except to the extent that any such representation or warranty expressly relates only to an earlier date.<br><br>(c) The Bankruptcy Court shall have entered an Order confirming the Plan as applicable, in form and substance satisfactory to the Buyer, which Order shall be in full force and effect and shall not have been reversed, vacated or stayed and shall not have been amended, supplemented or otherwise modified without the prior written consent of the Buyer (which consent may be withheld in its sole discretion) authorizing and approving the Plan and the transactions contemplated thereby, including, without limitation, the acquisition of the Transferred Membership Interests. |
| **Effect of Bankruptcy Filing:** | The representations and warranties and the affirmative and negative covenants to be set forth in the Plan shall, to the extent required, as determined by the Buyer in its sole and absolute discretion, (i) address the legal effect of the bankruptcy filings made by the Seller with the Bankruptcy Court during the Chapter 11 Case and (ii) reflect provisions customary in a Plan. |
| **Representation and Warranties of Seller:** | Subject to the provision described above under "Effect of Bankruptcy Filing," Seller hereby represents and warrants to Buyer that:<br><br>(a) Seller is a corporation duly organized, validly existing and in good standing under the laws of the State of Texas with full corporate power and authority to enter into this Agreement and to |

| | |
|---|---|
| | carry out its obligations hereunder. The execution, delivery, and performance by Seller of this Agreement have been duly authorized by all necessary corporate action on the part of Seller, and, this Agreement is legally binding upon Seller in accordance with its terms;<br><br>(b) The execution, delivery, and performance by Seller of this Agreement and the transactions contemplated thereby will not (i) violate the provisions of any order, judgment, or decree of any court or other governmental agency or any arbitrator applicable to Seller or the Certificate of Incorporation or Bylaws of Seller; or (ii) result in a material breach of or constitute (with due notice or lapse of time or both) a material default under any contract or agreement to which Seller is a party or by which Seller is bound; and<br><br>(c) Seller is the sole beneficial and record holder of the Transferred Membership Interests, and upon consummation of the transactions contemplated by this Agreement, Seller shall have transferred to Buyer and Buyer shall have obtained from Seller all right, title and interest in the Transferred Membership Interests, free and clear of any and all liens, mortgages, hypothecations, collateral assignments, charges, encumbrances, title defects, security interests or claims (whether recorded or unrecorded) of any kind.<br><br>(d) Seller has not retained any investment banker, broker, or finder in connection with the transactions contemplated by this Agreement. |
| **Warranties of Buyer:** | The Buyer hereby represents and warrants to Seller that:<br><br>(a) Buyer, or an affiliate of Buyer established for this transaction, is duly organized, validly existing and in good standing under the laws of the State of Delaware with full corporate power and authority to enter into this Agreement and to carry out its obligations hereunder. The execution, delivery, and performance by Buyer of this Agreement have been duly authorized by all necessary corporate action on the part of Buyer, and, this Agreement is legally binding upon Buyer in accordance with its terms;<br><br>(b) The execution, delivery, and performance by Buyer of this Agreement and the transactions contemplated thereby will not (i) violate the provisions of any order, judgment, or decree of any court or other governmental agency or any arbitrator applicable to Buyer or the Certificate of Organization or Company Agreement |

| | |
|---|---|
| | of Buyer; or (ii) result in a material breach of or constitute (with due notice or lapse of time or both) a material default under any contract or agreement to which Buyer is a party or by which Buyer is bound; and |
| | (c) Buyer has not retained any investment banker, broker, or finder in connection with the transactions contemplated by this Agreement. |
| **Miscellaneous:** | a. <u>Waiver and Amendment</u>. Neither this Agreement nor any provision hereof will be waived, modified, changed, discharged, or terminated except by an instrument in writing signed by the Party against whom any waiver, modification, charge, discharge, or termination is sought.<br><br>b. <u>Binding Effect</u>. The Agreement shall be binding upon, and inure to the benefit of, the Parties hereto and their successors, beneficiaries and permitted assigns, in accordance with the terms hereof.<br><br>c. <u>Assignability</u>.  The Agreement, once executed, is not transferable or assignable by either Party.<br><br>d. <u>Applicable Law</u>.  The Agreement and the rights of the Parties thereunder will be governed by and construed in all respects in accordance with the laws of the State of Texas, other than such laws, rules, regulations and case law that would result in the application of the laws of a jurisdiction other than the State of Texas.<br><br>e. <u>Severability</u>. If any provision of this Agreement is deemed or held to be illegal, invalid or unenforceable, this Agreement shall be considered divisible and inoperative as to such provision to the extent it is deemed to be illegal, invalid or unenforceable, and in all other respects this Agreement shall remain in full force and effect; provided, however, that if any provision of this Agreement is deemed or held to be illegal, invalid or unenforceable the parties hereto agree to replace such illegal, invalid or unenforceable provision with a provision that is legal, valid and enforceable that achieves the original intent of the parties as closely as possible. Further, should any provision contained in this Agreement ever be reformed or rewritten by any judicial body of competent jurisdiction, such provision, as so reformed or rewritten, shall be binding upon all of the parties hereto.<br><br>f. <u>Interpretation</u>. This Agreement has been negotiated by the respective parties hereto and the language hereof shall not be |

construed for or against any Party. Accordingly, any rule of law or any legal decision that would require interpretation of any claimed ambiguities in this Agreement against the drafting party has no application and is expressly waived. Each Party has had an opportunity to consult with its own legal counsel in connection with this Agreement and the Transaction.

g. Expenses. All fees and expenses incurred in connection with or related to this Agreement and the transactions contemplated hereby, shall be paid by the Party incurring such fees or expenses; provided that, to the extent any party hereto incurs fees or expenses (including attorney fees and expenses) in connection with enforcing its rights under this Agreement as a result of any other party's breach of this Agreement, the fees and expenses of the substantially prevailing party will be paid or reimbursed by the non-prevailing party(ies).

h. Further Assurances. Each Party agrees to cooperate fully with the other Parties and execute any and all supplementary documents or instruments to consummate the Transaction, and take all actions which may be necessary or appropriate to give full force and effect to all of the terms and intent of this Agreement.

i. Notices. All notices or other communications pursuant to this Agreement shall be in writing and shall be deemed to be sufficient if delivered personally, sent by email, nationally recognized, overnight courier, or mailed by registered or certified mail (return receipt requested), postage prepaid, to the parties at the addresses set forth on the signature page hereto. All such notices and other communications shall be deemed to have been given and received on the date of such delivery or rejection.

Signed by:

*Rashid Beirute-Prada, DDS, MDS*

224CD756449B476...

Rashid Beirute-Prada
Uptown Dental Solutions, PLLC

Signed by:

*Michael Richardson*

6CEEA375C2D9492...

Michael Richardson
Prime Dental Management, LLC

6

# **EXHIBIT A**

Five-Year Projections

## Uptown Dental Solutions, PLLC
### 5-Year Projections

| | | | | | | Year 1 | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Aug-25 | Sep-25 | Oct-25 | Nov-25 | Dec-25 | Jan-26 | Feb-26 | Mar-26 | Apr-26 | May-26 | Jun-26 | Jul-26 |
| Beginning Cash | - | 81,391.49 | 81,674.64 | 83,066.13 | 49,970.28 | 51,361.77 | 52,753.25 | 52,649.91 | 54,041.39 | 20,945.55 | 22,337.03 | 21,101.25 |
| **Receipts** | | | | | | | | | | | | |
| Receipts | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 |
| Contribution by Prime Dental | 250,000 | - | | | | | | | | | | 12,000 |
| **Total Receipts** | 373,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 135,500 |
| **Operating Disbursements** | | | | | | | | | | | | |
| Dental Supplies & Dental Lab | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 |
| Medical supplies & processing | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 |
| Office Expenses (per month) | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 1,298 | 649 |
| Other Vendors/Repairs/Maintenance (placeholder) | - | | | | | | | | | | | - |
| Auto-ACH Payments - Principal & Mass Mutual - Life Ins x2 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 966 | 483 |
| Utilities (divide by 4 weeks) | 1,546 | 1,546 | 1,546 | 1,933 | 1,546 | 1,546 | 1,933 | 1,546 | 1,933 | 1,546 | 1,933 | 1,933 |
| Marketing (paid monthly) | 319 | 319 | 319 | 478 | 319 | 319 | 319 | 319 | 478 | 319 | 319 | 478 |
| Payroll (staff) | 28,500 | 28,500 | 28,500 | 41,500 | 28,500 | 28,500 | 28,500 | 28,500 | 41,500 | 28,500 | 28,500 | 41,500 |
| Payroll (Dr Rashid) | 20,000 | 20,000 | 20,000 | 30,000 | 20,000 | 20,000 | 20,000 | 20,000 | 30,000 | 20,000 | 20,000 | 30,000 |
| Payroll (2nd DDS) | 15,000 | 15,000 | 15,000 | 22,500 | 15,000 | 15,000 | 15,000 | 15,000 | 22,500 | 15,000 | 15,000 | 22,500 |
| Payroll Taxes (6.2% + 1.45%) employer %s | 4,667 | 4,667 | 4,667 | 7,000 | 4,667 | 4,667 | 4,667 | 4,667 | 7,000 | 4,667 | 4,667 | 7,000 |
| Workers Comp Insurance | 319 | 319 | 319 | 478 | 319 | 319 | 319 | 319 | 478 | 319 | 319 | 478 |
| TX Franchise Tax (due 11.15.2024) - is this paid pre or post petition? | - | | | | | | | | | | | - |
| Business Insurance - confirm amount | 1,108 | 2,217 | 1,108 | 2,217 | 1,108 | 1,108 | 2,217 | 1,108 | 2,217 | 1,108 | 2,217 | 2,217 |
| **Total Operating Disbursements** | 91,892 | 93,000 | 91,892 | 126,379 | 91,892 | 91,892 | 93,387 | 91,892 | 126,379 | 91,892 | 94,519 | 126,379 |
| **Net Cash Flow (Operations)** | 281,608 | 30,500 | 31,608 | (2,879) | 31,608 | 31,608 | 30,113 | 31,608 | (2,879) | 31,608 | 28,981 | 9,121 |
| **Rents & Leases** | | | | | | | | | | | | |
| Rent (Heritage location) - assume 1st week of month | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 |
| **Total Rents & Leases Payments** | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 |
| **Bankruptcy Related Expenses** | | | | | | | | | | | | |
| Subchapter V Trustee | 5,000 | | | | | | | | | | | |
| Allowed Priority Tax Claims | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 |
| Allowed UMB Secured Claim | 13,500 | 13,500 | 13,500 | 13,500 | 13,500 | 13,500 | 13,500 | 13,500 | 13,500 | 13,500 | 13,500 | 13,500 |
| Allowed Unsecured Claims | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 |
| Debtors Counsel - Tittle Law Group (estimate) | 115,000 | | | | | | | | | | | |
| Financial Advisor - Bennett Thrasher, LLP | 50,000 | | | | | | | | | | | |
| **Total Bankruptcy Related Expenses** | 186,217 | 16,217 | 16,217 | 16,217 | 16,217 | 16,217 | 16,217 | 16,217 | 16,217 | 16,217 | 16,217 | 16,217 |
| **Total Net Cash Flow** | 81,391 | 283 | 1,391 | (33,096) | 1,391 | 1,391 | (103) | 1,391 | (33,096) | 1,391 | (1,236) | (21,096) |
| Ending Cash Balance | 81,391 | 81,675 | 83,066 | 49,970 | 51,362 | 52,753 | 52,650 | 54,041 | 20,946 | 22,337 | 21,101 | 5 |

# Uptown Dental Solutions, PLLC
## 5-Year Projections

| | Year 2 | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Aug-26 | Sep-26 | Oct-26 | Nov-26 | Dec-26 | Jan-27 | Feb-27 | Mar-27 | Apr-27 | May-27 | Jun-27 | Jul-27 |
| Beginning Cash | 5.00 | 5.49 | 4.64 | 5.13 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 |
| **Receipts** | | | | | | | | | | | | |
| Receipts | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 |
| Contribution by Prime Dental | 4,609 | 5,716 | 4,609 | 39,096 | 4,609 | 4,609 | 6,103 | 4,609 | 39,096 | 4,609 | 7,236 | 39,096 |
| **Total Receipts** | 128,109 | 129,216 | 128,109 | 162,596 | 128,109 | 128,109 | 129,603 | 128,109 | 162,596 | 128,109 | 130,736 | 162,596 |
| **Operating Disbursements** | | | | | | | | | | | | |
| Dental Supplies & Dental Lab | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 |
| Medical supplies & processing | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 |
| Office Expenses (per month) | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 1,298 | 649 |
| Other Vendors/Repairs/Maintenance (placeholder) | - | - | - | - | - | - | - | - | - | - | - | - |
| Auto-ACH Payments - Principal & Mass Mutual - Life Ins x2 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 966 | 483 |
| Utilities (divide by 4 weeks) | 1,546 | 1,546 | 1,546 | 1,933 | 1,546 | 1,546 | 1,933 | 1,546 | 1,933 | 1,546 | 1,933 | 1,933 |
| Marketing (paid monthly) | - | - | - | - | - | - | - | - | - | - | - | - |
| Payroll (staff) | 28,500 | 28,500 | 28,500 | 41,500 | 28,500 | 28,500 | 28,500 | 28,500 | 41,500 | 28,500 | 28,500 | 41,500 |
| Payroll (Dr Rashid) | 20,000 | 20,000 | 20,000 | 30,000 | 20,000 | 20,000 | 20,000 | 20,000 | 30,000 | 20,000 | 20,000 | 30,000 |
| Payroll (2nd DDS) | 15,000 | 15,000 | 15,000 | 22,500 | 15,000 | 15,000 | 15,000 | 15,000 | 22,500 | 15,000 | 15,000 | 22,500 |
| Payroll Taxes (6.2% + 1.45%) employer %s | 4,667 | 4,667 | 4,667 | 7,000 | 4,667 | 4,667 | 4,667 | 4,667 | 7,000 | 4,667 | 4,667 | 7,000 |
| Workers Comp Insurance | 319 | 319 | 319 | 478 | 319 | 319 | 319 | 319 | 478 | 319 | 319 | 478 |
| TX Franchise Tax (due 11.15.2024) - is this paid pre or post petition? | | | | | | | | | | | | |
| Business Insurance - confirm amount | 1,108 | 2,217 | 1,108 | 2,217 | 1,108 | 1,108 | 2,217 | 1,108 | 2,217 | 1,108 | 2,217 | 2,217 |
| **Total Operating Disbursements** | 91,892 | 93,000 | 91,892 | 126,379 | 91,892 | 91,892 | 93,387 | 91,892 | 126,379 | 91,892 | 94,519 | 126,379 |
| **Net Cash Flow (Operations)** | 36,217 | 36,216 | 36,217 | 36,216 | 36,217 | 36,217 | 36,217 | 36,217 | 36,217 | 36,217 | 36,217 | 36,217 |
| **Rents & Leases** | | | | | | | | | | | | |
| Rent (Heritage location) - assume 1st week of month | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 |
| **Total Rents & Leases Payments** | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 |
| **Bankruptcy Related Expenses** | | | | | | | | | | | | |
| Subchatper V Trustee | | | | | | | | | | | | |
| Allowed Priority Tax Claims | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 |
| Allowed UMB Secured Claim | 19,500 | 19,500 | 19,500 | 19,500 | 19,500 | 19,500 | 19,500 | 19,500 | 19,500 | 19,500 | 19,500 | 19,500 |
| Allowed Unsecured Claims | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 |
| Debtors Counsel - Tittle Law Group (estimate) | - | - | - | - | - | - | - | - | - | - | - | - |
| Financial Advisor - Bennett Thrasher, LLP | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Bankruptcy Related Expenses** | 22,217 | 22,217 | 22,217 | 22,217 | 22,217 | 22,217 | 22,217 | 22,217 | 22,217 | 22,217 | 22,217 | 22,217 |
| **Total Net Cash Flow** | 0 | (1) | 0 | (0) | (0.00) | 0.01 | (0.01) | 0.01 | (0.01) | 0.01 | (0.01) | 0.00 |
| **Ending Cash Balance** | 5 | 5 | 5 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 |

Docusign Envelope ID: B071B943-32A5-49D5-B63B-73AB2BB7BC10

**Uptown Dental Solutions, PLLC**
5-Year Projections

| | Aug-27 | Sep-27 | Oct-27 | Nov-27 | Dec-27 | Jan-28 | Feb-28 | Mar-28 | Apr-28 | May-28 | Jun-28 | Jul-28 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Year 3 | | | | | | |
| Beginning Cash | 5.00 | 5.00 | (0.00) | 5.00 | 5.00 | 5.00 | 4.99 | 5.00 | 4.99 | 5.00 | 4.99 | 5.00 |
| **Receipts** | | | | | | | | | | | | |
| Receipts | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 |
| Contribution by Prime Dental | 10,608 | 11,717 | 10,608 | 45,096 | 10,608 | 10,608 | 12,103 | 10,608 | 45,096 | 10,608 | 13,236 | 45,096 |
| **Total Receipts** | 134,108 | 135,217 | 134,108 | 168,596 | 134,108 | 134,108 | 135,603 | 134,108 | 168,596 | 134,108 | 136,736 | 168,596 |
| **Operating Disbursements** | | | | | | | | | | | | |
| Dental Supplies & Dental Lab | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 |
| Medical supplies & processing | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 |
| Office Expenses (per month) | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 1,298 | 649 |
| Other Vendors/Repairs/Maintenance (placeholder) | - | - | - | - | - | - | - | - | - | - | - | - |
| Auto-ACH Payments - Principal & Mass Mutual - Life Ins x2 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 966 | 483 |
| Utilities (divide by 4 weeks) | 1,546 | 1,546 | 1,546 | 1,933 | 1,546 | 1,546 | 1,933 | 1,546 | 1,933 | 1,546 | 1,933 | 1,933 |
| Marketing (paid monthly) | - | - | - | - | - | - | - | - | - | - | - | - |
| Payroll (staff) | 28,500 | 28,500 | 28,500 | 41,500 | 28,500 | 28,500 | 28,500 | 28,500 | 41,500 | 28,500 | 28,500 | 41,500 |
| Payroll (Dr Rashid) | 20,000 | 20,000 | 20,000 | 30,000 | 20,000 | 20,000 | 20,000 | 20,000 | 30,000 | 20,000 | 20,000 | 30,000 |
| Payroll (2nd DDS) | 15,000 | 15,000 | 15,000 | 22,500 | 15,000 | 15,000 | 15,000 | 15,000 | 22,500 | 15,000 | 15,000 | 22,500 |
| Payroll Taxes (6.2% + 1.45%) employer %s | 4,667 | 4,667 | 4,667 | 7,000 | 4,667 | 4,667 | 4,667 | 4,667 | 7,000 | 4,667 | 4,667 | 7,000 |
| Workers Comp Insurance | 319 | 319 | 319 | 478 | 319 | 319 | 319 | 319 | 478 | 319 | 319 | 478 |
| TX Franchise Tax (due 11.15.2024) - is this paid pre or post petition? | - | - | - | - | - | - | - | - | - | - | - | - |
| Business Insurance - confirm amount | 1,108 | 2,217 | 1,108 | 2,217 | 1,108 | 1,108 | 2,217 | 1,108 | 2,217 | 1,108 | 2,217 | 2,217 |
| **Total Operating Disbursements** | 91,892 | 93,000 | 91,892 | 126,379 | 91,892 | 91,892 | 93,387 | 91,892 | 126,379 | 91,892 | 94,519 | 126,379 |
| **Net Cash Flow (Operations)** | 42,216 | 42,217 | 42,216 | 42,217 | 42,216 | 42,216 | 42,217 | 42,216 | 42,217 | 42,216 | 42,217 | 42,217 |
| **Rents & Leases** | | | | | | | | | | | | |
| Rent (Heritage location) - assume 1st week of month | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 |
| **Total Rents & Leases Payments** | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 |
| **Bankruptcy Related Expenses** | | | | | | | | | | | | |
| Subchapter V Trustee | - | - | - | - | - | - | - | - | - | - | - | - |
| Allowed Priority Tax Claims | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 |
| Allowed UMB Secured Claim | 25,500 | 25,500 | 25,500 | 25,500 | 25,500 | 25,500 | 25,500 | 25,500 | 25,500 | 25,500 | 25,500 | 25,500 |
| Allowed Unsecured Claims | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 |
| Debtors Counsel - Tittle Law Group (estimate) | - | - | - | - | - | - | - | - | - | - | - | - |
| Financial Advisor - Bennett Thrasher, LLP | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Bankruptcy Related Expenses** | 28,217 | 28,217 | 28,217 | 28,217 | 28,217 | 28,217 | 28,217 | 28,217 | 28,217 | 28,217 | 28,217 | 28,217 |
| **Total Net Cash Flow** | (0.00) | 0.00 | (0.00) | 0.00 | (0.00) | (0.00) | 0.00 | (0.00) | 0.00 | (0.00) | 0.00 | 0.00 |
| Ending Cash Balance | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 4.99 | 5.00 | 4.99 | 5.00 | 4.99 | 5.00 | 5.00 |

## Uptown Dental Solutions, PLLC
### 5-Year Projections

|  | | | | | | Year 4 | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  | Aug-28 | Sep-28 | Oct-28 | Nov-28 | Dec-28 | Jan-29 | Feb-29 | Mar-29 | Apr-29 | May-29 | Jun-29 | Jul-29 |
| Beginning Cash | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 4.99 | 5.00 | 4.99 | 5.00 | 4.99 | 5.00 |
| **Receipts** | | | | | | | | | | | | |
| Receipts | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 |
| Contribution by Prime Dental | 16,609 | 17,717 | 16,609 | 16,609 | 16,609 | 16,609 | 18,103 | 16,609 | 51,096 | 16,609 | 19,236 | 51,096 |
| **Total Receipts** | 140,109 | 141,217 | 140,109 | 174,596 | 140,109 | 140,109 | 141,603 | 140,109 | 174,596 | 140,109 | 142,736 | 174,596 |
| **Operating Disbursements** | | | | | | | | | | | | |
| Dental Supplies & Dental Lab | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 |
| Medical supplies & processing | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 |
| Office Expenses (per month) | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 1,298 | 649 |
| Other Vendors/Repairs/Maintenance (placeholder) | - | - | - | - | - | - | - | - | - | - | - | - |
| Auto-ACH Payments - Principal & Mass Mutual - Life Ins x2 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 966 | 483 |
| Utilities (divide by 4 weeks) | 1,546 | 1,546 | 1,546 | 1,933 | 1,546 | 1,546 | 1,933 | 1,546 | 1,933 | 1,546 | 1,933 | 1,933 |
| Marketing (paid monthly) | - | - | - | - | - | - | - | - | - | - | - | - |
| Payroll (staff) | 28,500 | 28,500 | 28,500 | 41,500 | 28,500 | 28,500 | 28,500 | 28,500 | 41,500 | 28,500 | 28,500 | 41,500 |
| Payroll (Dr Rashid) | 20,000 | 20,000 | 20,000 | 30,000 | 20,000 | 20,000 | 20,000 | 20,000 | 30,000 | 20,000 | 20,000 | 30,000 |
| Payroll (2nd DDS) | 15,000 | 15,000 | 15,000 | 22,500 | 15,000 | 15,000 | 15,000 | 15,000 | 22,500 | 15,000 | 15,000 | 22,500 |
| Payroll Taxes (6.2% + 1.45%) employer %s | 4,667 | 4,667 | 4,667 | 7,000 | 4,667 | 4,667 | 4,667 | 4,667 | 7,000 | 4,667 | 4,667 | 7,000 |
| Workers Comp Insurance | 319 | 319 | 319 | 478 | 319 | 319 | 319 | 319 | 478 | 319 | 319 | 478 |
| TX Franchise Tax (due 11.15.2024) - is this paid pre or post petition? | - | - | - | - | - | - | - | - | - | - | - | - |
| Business Insurance - confirm amount | 1,108 | 2,217 | 1,108 | 2,217 | 1,108 | 1,108 | 2,217 | 1,108 | 2,217 | 1,108 | 2,217 | 2,217 |
| **Total Operating Disbursements** | 91,892 | 93,000 | 91,892 | 126,379 | 91,892 | 91,892 | 93,387 | 91,892 | 126,379 | 91,892 | 94,519 | 126,379 |
| **Net Cash Flow (Operations)** | 48,217 | 48,217 | 48,217 | 48,217 | 48,217 | 48,217 | 48,217 | 48,217 | 48,217 | 48,217 | 48,217 | 48,217 |
| **Rents & Leases** | | | | | | | | | | | | |
| Rent (Heritage location) - assume 1st week of month | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 |
| **Total Rents & Leases Payments** | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 |
| **Bankruptcy Related Expenses** | | | | | | | | | | | | |
| Subchapter V Trustee | - | - | - | - | - | - | - | - | - | - | - | - |
| Allowed Priority Tax Claims | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 |
| Allowed UMB Secured Claim | 31,500 | 31,500 | 31,500 | 31,500 | 31,500 | 31,500 | 31,500 | 31,500 | 31,500 | 31,500 | 31,500 | 31,500 |
| Allowed Unsecured Claims | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 |
| Debtors Counsel - Tittle Law Group (estimate) | - | - | - | - | - | - | - | - | - | - | - | - |
| Financial Advisor - Bennett Thrasher, LLP | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Bankruptcy Related Expenses** | 34,217 | 34,217 | 34,217 | 34,217 | 34,217 | 34,217 | 34,217 | 34,217 | 34,217 | 34,217 | 34,217 | 34,217 |
| **Total Net Cash Flow** | (0.00) | 0.00 | (0.00) | 0.00 | (0.00) | (0.00) | 0.00 | (0.00) | 0.00 | (0.00) | 0.00 | 0.00 |
| Ending Cash Balance | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 4.99 | 5.00 | 4.99 | 5.00 | 4.99 | 5.00 | 5.00 |

**Uptown Dental Solutions, PLLC**
5-Year Projections

| | Aug-29 | Sep-29 | Oct-29 | Nov-29 | Dec-29 | Jan-30 | Feb-30 | Mar-30 | Apr-30 | May-30 | Jun-30 | Jul-30 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Year 5 | | | | | | |
| Beginning Cash | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 4.99 | 5.00 | 4.99 | 5.00 | 4.99 | 5.00 |
| **Receipts** | | | | | | | | | | | | |
| Receipts | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 |
| Contribution by Prime Dental | 22,609 | 23,717 | 22,609 | 57,096 | 22,609 | 22,609 | 24,103 | 22,609 | 57,096 | 22,609 | 25,236 | 57,096 |
| **Total Receipts** | 146,109 | 147,217 | 146,109 | 180,596 | 146,109 | 146,109 | 147,603 | 146,109 | 180,596 | 146,109 | 148,736 | 180,596 |
| **Operating Disbursements** | | | | | | | | | | | | |
| Dental Supplies & Dental Lab | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 |
| Medical supplies & processing | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 |
| Office Expenses (per month) | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 1,298 | 649 |
| Other Vendors/Repairs/Maintenance (placeholder) | - | - | - | - | - | - | - | - | - | - | - | - |
| Auto-ACH Payments - Principal & Mass Mutual - Life Ins x2 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 966 | 483 |
| Utilities (divide by 4 weeks) | 1,546 | 1,546 | 1,546 | 1,933 | 1,546 | 1,546 | 1,933 | 1,546 | 1,933 | 1,546 | 1,933 | 1,933 |
| Marketing (paid monthly) | - | - | - | - | - | - | - | - | - | - | - | - |
| Payroll (staff) | 28,500 | 28,500 | 28,500 | 41,500 | 28,500 | 28,500 | 28,500 | 28,500 | 41,500 | 28,500 | 28,500 | 41,500 |
| Payroll (Dr Rashid) | 20,000 | 20,000 | 20,000 | 30,000 | 20,000 | 20,000 | 20,000 | 20,000 | 30,000 | 20,000 | 20,000 | 30,000 |
| Payroll (2nd DDS) | 15,000 | 15,000 | 15,000 | 22,500 | 15,000 | 15,000 | 15,000 | 15,000 | 22,500 | 15,000 | 15,000 | 22,500 |
| Payroll Taxes (6.2% + 1.45%) employer %s | 4,667 | 4,667 | 4,667 | 7,000 | 4,667 | 4,667 | 4,667 | 4,667 | 7,000 | 4,667 | 4,667 | 7,000 |
| Workers Comp Insurance | 319 | 319 | 319 | 478 | 319 | 319 | 319 | 319 | 478 | 319 | 319 | 478 |
| TX Franchise Tax (due 11.15.2024) - is this paid pre or post petition? | - | - | - | - | - | - | - | - | - | - | - | - |
| Business Insurance - confirm amount | 1,108 | 2,217 | 1,108 | 2,217 | 1,108 | 1,108 | 2,217 | 1,108 | 2,217 | 1,108 | 2,217 | 2,217 |
| **Total Operating Disbursements** | 91,892 | 93,000 | 91,892 | 126,379 | 91,892 | 91,892 | 93,387 | 91,892 | 126,379 | 91,892 | 94,519 | 126,379 |
| **Net Cash Flow (Operations)** | 54,217 | 54,217 | 54,217 | 54,217 | 54,217 | 54,217 | 54,217 | 54,217 | 54,217 | 54,217 | 54,217 | 54,217 |
| **Rents & Leases** | | | | | | | | | | | | |
| Rent (Heritage location) - assume 1st week of month | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 |
| **Total Rents & Leases Payments** | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 |
| **Bankruptcy Related Expenses** | | | | | | | | | | | | |
| Subchapter V Trustee | - | - | - | - | - | - | - | - | - | - | - | - |
| Allowed Priority Tax Claims | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 |
| Allowed UMB Secured Claim | 37,500 | 37,500 | 37,500 | 37,500 | 37,500 | 37,500 | 37,500 | 37,500 | 37,500 | 37,500 | 37,500 | 37,500 |
| Allowed Unsecured Claims | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 |
| Debtors Counsel - Tittle Law Group (estimate) | - | - | - | - | - | - | - | - | - | - | - | - |
| Financial Advisor - Bennett Thrasher, LLP | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Bankruptcy Related Expenses** | 40,217 | 40,217 | 40,217 | 40,217 | 40,217 | 40,217 | 40,217 | 40,217 | 40,217 | 40,217 | 40,217 | 40,217 |
| **Total Net Cash Flow** | (0.00) | 0.00 | (0.00) | 0.00 | (0.00) | (0.00) | 0.00 | (0.00) | 0.00 | (0.00) | 0.00 | 0.00 |
| Ending Cash Balance | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 |

# EXHIBIT B

**Liquidation Analysis**

**UPTOWN DENTAL SOLUTIONS PLLC LAKESIDE DENTAL SOLUTIONS**
**LIQUIDATION ANALYSIS**

| Assets | | Chapter 7 | | Chapter 11 |
|---|---|---|---|---|
| Cash | $ | 18,591.90 | $ | 643,095.12 |
| Dental Lab and Office Equipment | $ | 159,000.00 | $ | 159,000.00 |
| Office Supplies | $ | 26,000.00 | $ | 26,000.00 |
| Customer List/Goodwill | $ | 687,000.00 | $ | 687,000.00 |
| **Total Assets** | $ | 890,591.90 | $ | 1,515,095.12 |
| | | | | |
| **Liabilities** | | | | |
| | | | | |
| Administrative Fees | $ | 10,000.00 | $ | 130,000.00 |
| Priority Tax Creditor | $ | 4,838.70 | $ | 4,838.70 |
| Secured Creditors | $ | 875,753.20 | $ | 1,214,176.42 |
| Unsecured Creditors | $ | - | $ | 166,080.00 |
| **Total Liabilities** | $ | 890,591.90 | $ | 1,515,095.12 |
| | | | | |
| **Total Unsecured Creditors** | $ | 1,572,394.61 | $ | 1,233,971.39 |
| | | | | |
| **Distributions to Unsecured Creditors** | | 0% | | 13% |

# EXHIBIT C

**5-Year Projections**

**Uptown Dental Solutions, PLLC**

5-Year Projections

| | | | | | | | Year 1 | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Aug-25 | Sep-25 | Oct-25 | Nov-25 | Dec-25 | Jan-26 | Feb-26 | Mar-26 | Apr-26 | May-26 | Jun-26 | Jul-26 |
| Beginning Cash | - | 81,391.49 | 81,674.64 | 83,066.13 | 49,970.28 | 51,361.77 | 52,753.25 | 52,649.91 | 54,041.39 | 20,945.55 | 22,337.03 | 21,101.25 |
| **Receipts** | | | | | | | | | | | | |
| Receipts | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 |
| Contribution by Prime Dental | 250,000 | | | | | | | | | | | 12,000 |
| **Total Receipts** | 373,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 135,500 |
| **Operating Disbursements** | | | | | | | | | | | | |
| Dental Supplies & Dental Lab | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 |
| Medical supplies & processing | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 |
| Office Expenses (per month) | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 1,298 | 649 |
| Other Vendors/Repairs/Maintenance (placeholder) | - | - | - | - | - | - | - | - | - | - | - | - |
| Auto-ACH Payments - Principal & Mass Mutual - Life Ins x2 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 966 | 483 |
| Utilities (divide by 4 weeks) | 1,546 | 1,546 | 1,546 | 1,933 | 1,546 | 1,546 | 1,933 | 1,546 | 1,933 | 1,546 | 1,933 | 1,933 |
| Marketing (paid monthly) | - | - | - | - | - | - | - | - | - | - | - | - |
| Payroll (staff) | 28,500 | 28,500 | 28,500 | 41,500 | 28,500 | 28,500 | 28,500 | 28,500 | 41,500 | 28,500 | 28,500 | 41,500 |
| Payroll (Dr Rashid) | 20,000 | 20,000 | 20,000 | 30,000 | 20,000 | 20,000 | 20,000 | 20,000 | 30,000 | 20,000 | 20,000 | 30,000 |
| Payroll (2nd DDS) | 15,000 | 15,000 | 15,000 | 22,500 | 15,000 | 15,000 | 15,000 | 15,000 | 22,500 | 15,000 | 15,000 | 22,500 |
| Payroll Taxes (6.2% + 1.45%) employer %s | 4,667 | 4,667 | 4,667 | 7,000 | 4,667 | 4,667 | 4,667 | 4,667 | 7,000 | 4,667 | 4,667 | 7,000 |
| Workers Comp Insurance | 319 | 319 | 319 | 478 | 319 | 319 | 319 | 319 | 478 | 319 | 319 | 478 |
| TX Franchise Tax (due 11.15.2024) - is this paid pre or post petition? | - | - | - | - | - | - | - | - | - | - | - | - |
| Business Insurance - confirm amount | 1,108 | 2,217 | 1,108 | 2,217 | 1,108 | 1,108 | 2,217 | 1,108 | 2,217 | 1,108 | 2,217 | 2,217 |
| **Total Operating Disbursements** | 91,892 | 93,000 | 91,892 | 126,379 | 91,892 | 91,892 | 93,387 | 91,892 | 126,379 | 91,892 | 94,519 | 126,379 |
| **Net Cash Flow (Operations)** | 281,608 | 30,500 | 31,608 | (2,879) | 31,608 | 31,608 | 30,113 | 31,608 | (2,879) | 31,608 | 28,981 | 9,121 |
| **Rents & Leases** | | | | | | | | | | | | |
| Rent (Heritage location) - assume 1st week of month | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 |
| **Total Rents & Leases Payments** | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 |
| **Bankruptcy Related Expenses** | | | | | | | | | | | | |
| Subchapter V Trustee | 5,000 | | | | | | | | | | | |
| Allowed Priority Tax Claims | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 |
| Allowed UMB Secured Claim | 13,500 | 13,500 | 13,500 | 13,500 | 13,500 | 13,500 | 13,500 | 13,500 | 13,500 | 13,500 | 13,500 | 13,500 |
| Allowed Unsecured Claims | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 |
| Debtors Counsel - Tittle Law Group (estimate) | 115,000 | | | | | | | | | | | |
| Financial Advisor - Bennett Thrasher, LLP | 50,000 | | | | | | | | | | | |
| **Total Bankruptcy Related Expenses** | 186,217 | 16,217 | 16,217 | 16,217 | 16,217 | 16,217 | 16,217 | 16,217 | 16,217 | 16,217 | 16,217 | 16,217 |
| **Total Net Cash Flow** | 81,391 | 283 | 1,391 | (33,096) | 1,391 | 1,391 | (103) | 1,391 | (33,096) | 1,391 | (1,236) | (21,096) |
| Ending Cash Balance | 81,391 | 81,675 | 83,066 | 49,970 | 51,362 | 52,753 | 52,650 | 54,041 | 20,946 | 22,337 | 21,101 | 5 |

**Uptown Dental Solutions, PLLC**

5-Year Projections

| | | Year 2 | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Aug-26 | Sep-26 | Oct-26 | Nov-26 | Dec-26 | Jan-27 | Feb-27 | Mar-27 | Apr-27 | May-27 | Jun-27 | Jul-27 |
| Beginning Cash | 5.00 | 5.49 | 4.64 | 5.13 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 |
| **Receipts** | | | | | | | | | | | | |
| Receipts | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 |
| Contribution by Prime Dental | 4,609 | 5,716 | 4,609 | 39,096 | 4,609 | 6,103 | 4,609 | 4,609 | 39,096 | 4,609 | 7,236 | 39,096 |
| **Total Receipts** | 128,109 | 129,216 | 128,109 | 162,596 | 128,109 | 129,603 | 128,109 | 128,109 | 162,596 | 128,109 | 130,736 | 162,596 |
| **Operating Disbursements** | | | | | | | | | | | | |
| Dental Supplies & Dental Lab | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 |
| Medical supplies & processing | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 |
| Office Expenses (per month) | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 1,298 | 649 |
| Other Vendors/Repairs/Maintenance (placeholder) | - | - | - | - | - | - | - | - | - | - | - | - |
| Auto-ACH Payments - Principal & Mass Mutual - Life Ins x2 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 966 | 483 |
| Utilities (divide by 4 weeks) | 1,546 | 1,546 | 1,546 | 1,933 | 1,546 | 1,546 | 1,933 | 1,546 | 1,933 | 1,546 | 1,933 | 1,933 |
| Marketing (paid monthly) | - | - | - | - | - | - | - | - | - | - | - | - |
| Payroll (staff) | 28,500 | 28,500 | 28,500 | 41,500 | 28,500 | 28,500 | 28,500 | 28,500 | 41,500 | 28,500 | 28,500 | 41,500 |
| Payroll (Dr Rashid) | 20,000 | 20,000 | 20,000 | 30,000 | 20,000 | 20,000 | 20,000 | 20,000 | 30,000 | 20,000 | 20,000 | 30,000 |
| Payroll (2nd DDS) | 15,000 | 15,000 | 15,000 | 22,500 | 15,000 | 15,000 | 15,000 | 15,000 | 22,500 | 15,000 | 15,000 | 22,500 |
| Payroll Taxes (6.2% + 1.45%) employer %s | 4,667 | 4,667 | 4,667 | 7,000 | 4,667 | 4,667 | 4,667 | 4,667 | 7,000 | 4,667 | 4,667 | 7,000 |
| Workers Comp Insurance | 319 | 319 | 319 | 478 | 319 | 319 | 319 | 319 | 478 | 319 | 319 | 478 |
| TX Franchise Tax (due 11.15.2024) - is this paid pre or post petition? | - | - | - | - | - | - | - | - | - | - | - | - |
| Business Insurance - confirm amount | 1,108 | 2,217 | 1,108 | 2,217 | 1,108 | 1,108 | 2,217 | 1,108 | 2,217 | 1,108 | 2,217 | 2,217 |
| **Total Operating Disbursements** | 91,892 | 93,000 | 91,892 | 126,379 | 91,892 | 93,387 | 91,892 | 91,892 | 126,379 | 91,892 | 94,519 | 126,379 |
| **Net Cash Flow (Operations)** | 36,217 | 36,216 | 36,217 | 36,216 | 36,217 | 36,217 | 36,217 | 36,217 | 36,217 | 36,217 | 36,217 | 36,217 |
| **Rents & Leases** | | | | | | | | | | | | |
| Rent (Heritage location) - assume 1st week of month | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 |
| **Total Rents & Leases Payments** | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 |
| **Bankruptcy Related Expenses** | | | | | | | | | | | | |
| Subchapter V Trustee | - | - | - | - | - | - | - | - | - | - | - | - |
| Allowed Priority Tax Claims | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 |
| Allowed UMB Secured Claim | 19,500 | 19,500 | 19,500 | 19,500 | 19,500 | 19,500 | 19,500 | 19,500 | 19,500 | 19,500 | 19,500 | 19,500 |
| Allowed Unsecured Claims | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 |
| Debtors Counsel - Tittle Law Group (estimate) | - | - | - | - | - | - | - | - | - | - | - | - |
| Financial Advisor - Bennett Thrasher, LLP | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Bankruptcy Related Expenses** | 22,217 | 22,217 | 22,217 | 22,217 | 22,217 | 22,217 | 22,217 | 22,217 | 22,217 | 22,217 | 22,217 | 22,217 |
| **Total Net Cash Flow** | 0 | (1) | 0 | (0) | (0.00) | 0.01 | (0.01) | 0.01 | (0.01) | 0.01 | (0.01) | 0.00 |
| Ending Cash Balance | 5 | 5 | 5 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 |

# Uptown Dental Solutions, PLLC

5-Year Projections

| | Aug-27 | Sep-27 | Oct-27 | Nov-27 | Dec-27 | Jan-28 | Feb-28 | Mar-28 | Apr-28 | May-28 | Jun-28 | Jul-28 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Year 3 | | | | | |
| Beginning Cash | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 4.99 | 5.00 | 4.99 | 5.00 | 4.99 | 5.00 |
| **Receipts** | | | | | | | | | | | | |
| Receipts | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 |
| Contribution by Prime Dental | 10,608 | 11,717 | 10,608 | 45,096 | 10,608 | 10,608 | 12,103 | 10,608 | 45,096 | 10,608 | 13,236 | 45,096 |
| **Total Receipts** | 134,108 | 135,217 | 134,108 | 168,596 | 134,108 | 134,108 | 135,603 | 134,108 | 168,596 | 134,108 | 136,736 | 168,596 |
| **Operating Disbursements** | | | | | | | | | | | | |
| Dental Supplies & Dental Lab | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 |
| Medical supplies & processing | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 |
| Office Expenses (per month) | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 1,298 | 649 |
| Other Vendors/Repairs/Maintenance (placeholder) | - | - | - | - | - | - | - | - | - | - | - | - |
| Auto-ACH Payments - Principal & Mass Mutual - Life Ins x2 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 966 | 483 |
| Utilities (divide by 4 weeks) | 1,546 | 1,546 | 1,546 | 1,933 | 1,546 | 1,546 | 1,933 | 1,546 | 1,933 | 1,546 | 1,933 | 1,933 |
| Marketing (paid monthly) | - | - | - | - | - | - | - | - | - | - | - | - |
| Payroll (staff) | 28,500 | 28,500 | 28,500 | 41,500 | 28,500 | 28,500 | 28,500 | 28,500 | 41,500 | 28,500 | 28,500 | 41,500 |
| Payroll (Dr Rashid) | 20,000 | 20,000 | 20,000 | 30,000 | 20,000 | 20,000 | 20,000 | 20,000 | 30,000 | 20,000 | 20,000 | 30,000 |
| Payroll (2nd DDS) | 15,000 | 15,000 | 15,000 | 22,500 | 15,000 | 15,000 | 15,000 | 15,000 | 22,500 | 15,000 | 15,000 | 22,500 |
| Payroll Taxes (6.2% + 1.45%) employer %s | 4,667 | 4,667 | 4,667 | 7,000 | 4,667 | 4,667 | 4,667 | 4,667 | 7,000 | 4,667 | 4,667 | 7,000 |
| Workers Comp Insurance | 319 | 319 | 319 | 478 | 319 | 319 | 319 | 319 | 478 | 319 | 319 | 478 |
| TX Franchise Tax (due 11.15.2024) - is this paid pre or post petition? | - | - | - | - | - | - | - | - | - | - | - | - |
| Business Insurance - confirm amount | 1,108 | 2,217 | 1,108 | 2,217 | 1,108 | 1,108 | 2,217 | 1,108 | 2,217 | 1,108 | 2,217 | 2,217 |
| **Total Operating Disbursements** | 91,892 | 93,000 | 91,892 | 126,379 | 91,892 | 91,892 | 93,387 | 91,892 | 126,379 | 91,892 | 94,519 | 126,379 |
| **Net Cash Flow (Operations)** | 42,216 | 42,217 | 42,216 | 42,217 | 42,216 | 42,216 | 42,217 | 42,216 | 42,217 | 42,216 | 42,217 | 42,217 |
| **Rents & Leases** | | | | | | | | | | | | |
| Rent (Heritage location) - assume 1st week of month | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 |
| **Total Rents & Leases Payments** | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 |
| **Bankruptcy Related Expenses** | | | | | | | | | | | | |
| Subchapter V Trustee | - | - | - | - | - | - | - | - | - | - | - | - |
| Allowed Priority Tax Claims | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 |
| Allowed UMB Secured Claim | 25,500 | 25,500 | 25,500 | 25,500 | 25,500 | 25,500 | 25,500 | 25,500 | 25,500 | 25,500 | 25,500 | 25,500 |
| Allowed Unsecured Claims | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 |
| Debtors Counsel - Tittle Law Group (estimate) | - | - | - | - | - | - | - | - | - | - | - | - |
| Financial Advisor - Bennett Thrasher, LLP | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Bankruptcy Related Expenses** | 28,217 | 28,217 | 28,217 | 28,217 | 28,217 | 28,217 | 28,217 | 28,217 | 28,217 | 28,217 | 28,217 | 28,217 |
| **Total Net Cash Flow** | (0.00) | 0.00 | (0.00) | 0.00 | (0.00) | (0.00) | 0.00 | (0.00) | 0.00 | (0.00) | 0.00 | 0.00 |
| Ending Cash Balance | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 4.99 | 5.00 | 4.99 | 5.00 | 4.99 | 5.00 | 5.00 |

## Uptown Dental Solutions, PLLC
### 5-Year Projections

| | | | | | Year 4 | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Aug-28 | Sep-28 | Oct-28 | Nov-28 | Dec-28 | Jan-29 | Feb-29 | Mar-29 | Apr-29 | May-29 | Jun-29 | Jul-29 |
| Beginning Cash | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 4.99 | 5.00 | 4.99 | 5.00 | 4.99 | 5.00 |
| **Receipts** | | | | | | | | | | | | |
| Receipts | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 |
| Contribution by Prime Dental | 16,609 | 17,717 | 16,609 | 51,096 | 16,609 | 16,609 | 18,103 | 16,609 | 51,096 | 16,609 | 19,236 | 51,096 |
| **Total Receipts** | 140,109 | 141,217 | 140,109 | 174,596 | 140,109 | 140,109 | 141,603 | 140,109 | 174,596 | 140,109 | 142,736 | 174,596 |
| **Operating Disbursements** | | | | | | | | | | | | |
| Dental Supplies & Dental Lab | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 |
| Medical supplies & processing | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 |
| Office Expenses (per month) | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 1,298 | 649 |
| Other Vendors/Repairs/Maintenance (placeholder) | - | - | - | - | - | - | - | - | - | - | - | - |
| Auto-ACH Payments - Principal & Mass Mutual - Life Ins x2 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 966 | 483 |
| Utilities (divide by 4 weeks) | 1,546 | 1,546 | 1,546 | 1,933 | 1,546 | 1,546 | 1,933 | 1,546 | 1,933 | 1,546 | 1,933 | 1,933 |
| Marketing (paid monthly) | - | - | - | - | - | - | - | - | - | - | - | - |
| Payroll (staff) | 28,500 | 28,500 | 28,500 | 41,500 | 28,500 | 28,500 | 28,500 | 28,500 | 41,500 | 28,500 | 28,500 | 41,500 |
| Payroll (Dr Rashid) | 20,000 | 20,000 | 20,000 | 30,000 | 20,000 | 20,000 | 20,000 | 20,000 | 30,000 | 20,000 | 20,000 | 30,000 |
| Payroll (2nd DDS) | 15,000 | 15,000 | 15,000 | 22,500 | 15,000 | 15,000 | 15,000 | 15,000 | 22,500 | 15,000 | 15,000 | 22,500 |
| Payroll Taxes (6.2% + 1.45%) employer %s | 4,667 | 4,667 | 4,667 | 7,000 | 4,667 | 4,667 | 4,667 | 4,667 | 7,000 | 4,667 | 4,667 | 7,000 |
| Workers Comp Insurance | 319 | 319 | 319 | 478 | 319 | 319 | 319 | 319 | 478 | 319 | 319 | 478 |
| TX Franchise Tax (due 11.15.2024) - is this paid pre or post petition? | - | | | | | | | | | | | |
| Business Insurance - confirm amount | 1,108 | 2,217 | 1,108 | 2,217 | 1,108 | 1,108 | 2,217 | 1,108 | 2,217 | 1,108 | 2,217 | 2,217 |
| **Total Operating Disbursements** | 91,892 | 93,000 | 91,892 | 126,379 | 91,892 | 91,892 | 93,387 | 91,892 | 126,379 | 91,892 | 94,519 | 126,379 |
| **Net Cash Flow (Operations)** | 48,217 | 48,217 | 48,217 | 48,217 | 48,217 | 48,217 | 48,217 | 48,217 | 48,217 | 48,217 | 48,217 | 48,217 |
| **Rents & Leases** | | | | | | | | | | | | |
| Rent (Heritage location) - assume 1st week of month | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 |
| **Total Rents & Leases Payments** | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 |
| **Bankruptcy Related Expenses** | | | | | | | | | | | | |
| Subchapter V Trustee | - | - | - | - | - | - | - | - | - | - | - | - |
| Allowed Priority Tax Claims | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 |
| Allowed UMB Secured Claim | 31,500 | 31,500 | 31,500 | 31,500 | 31,500 | 31,500 | 31,500 | 31,500 | 31,500 | 31,500 | 31,500 | 31,500 |
| Allowed Unsecured Claims | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 |
| Debtors Counsel - Tittle Law Group (estimate) | - | - | - | - | - | - | - | - | - | - | - | - |
| Financial Advisor - Bennett Thrasher, LLP | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Bankruptcy Related Expenses** | 34,217 | 34,217 | 34,217 | 34,217 | 34,217 | 34,217 | 34,217 | 34,217 | 34,217 | 34,217 | 34,217 | 34,217 |
| **Total Net Cash Flow** | (0.00) | 0.00 | (0.00) | 0.00 | (0.00) | (0.00) | 0.00 | (0.00) | 0.00 | (0.00) | 0.00 | 0.00 |
| **Ending Cash Balance** | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 4.99 | 5.00 | 4.99 | 5.00 | 4.99 | 5.00 | 5.00 |

**Uptown Dental Solutions, PLLC**
5-Year Projections

| | Year 5 | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Aug-29 | Sep-29 | Oct-29 | Nov-29 | Dec-29 | Jan-30 | Feb-30 | Mar-30 | Apr-30 | May-30 | Jun-30 | Jul-30 |
| Beginning Cash | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 4.99 | 5.00 | 4.99 | 5.00 | 4.99 | 5.00 |
| **Receipts** | | | | | | | | | | | | |
| Receipts | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 |
| Contribution by Prime Dental | 22,609 | 23,717 | 22,609 | 57,096 | 22,609 | 22,609 | 24,103 | 22,609 | 57,096 | 22,609 | 25,236 | 57,096 |
| **Total Receipts** | 146,109 | 147,217 | 146,109 | 180,596 | 146,109 | 146,109 | 147,603 | 146,109 | 180,596 | 146,109 | 148,736 | 180,596 |
| **Operating Disbursements** | | | | | | | | | | | | |
| Dental Supplies & Dental Lab | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 |
| Medical supplies & processing | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 |
| Office Expenses (per month) | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 1,298 | 649 |
| Other Vendors/Repairs/Maintenance (placeholder) | - | - | - | - | - | - | - | - | - | - | - | - |
| Auto-ACH Payments - Principal & Mass Mutual - Life Ins x2 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 966 | 483 |
| Utilities (divide by 4 weeks) | 1,546 | 1,546 | 1,546 | 1,933 | 1,546 | 1,546 | 1,933 | 1,546 | 1,933 | 1,546 | 1,933 | 1,933 |
| Marketing (paid monthly) | - | - | - | - | - | - | - | - | - | - | - | - |
| Payroll (staff) | 28,500 | 28,500 | 28,500 | 41,500 | 28,500 | 28,500 | 28,500 | 28,500 | 41,500 | 28,500 | 28,500 | 41,500 |
| Payroll (Dr Rashid) | 20,000 | 20,000 | 20,000 | 30,000 | 20,000 | 20,000 | 20,000 | 20,000 | 30,000 | 20,000 | 20,000 | 30,000 |
| Payroll (2nd DDS) | 15,000 | 15,000 | 15,000 | 22,500 | 15,000 | 15,000 | 15,000 | 15,000 | 22,500 | 15,000 | 15,000 | 22,500 |
| Payroll Taxes (6.2% + 1.45%) employer %s | 4,667 | 4,667 | 4,667 | 7,000 | 4,667 | 4,667 | 4,667 | 4,667 | 7,000 | 4,667 | 4,667 | 7,000 |
| Workers Comp Insurance | 319 | 319 | 319 | 478 | 319 | 319 | 319 | 319 | 478 | 319 | 319 | 478 |
| TX Franchise Tax (due 11.15.2024) - is this paid pre or post petition? | | | | | | | | | | | | |
| Business Insurance - confirm amount | 1,108 | 2,217 | 1,108 | 2,217 | 1,108 | 1,108 | 2,217 | 1,108 | 2,217 | 1,108 | 2,217 | 2,217 |
| **Total Operating Disbursements** | 91,892 | 93,000 | 91,892 | 126,379 | 91,892 | 91,892 | 93,387 | 91,892 | 126,379 | 91,892 | 94,519 | 126,379 |
| **Net Cash Flow (Operations)** | 54,217 | 54,217 | 54,217 | 54,217 | 54,217 | 54,217 | 54,217 | 54,217 | 54,217 | 54,217 | 54,217 | 54,217 |
| **Rents & Leases** | | | | | | | | | | | | |
| Rent (Heritage location) - assume 1st week of month | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 |
| **Total Rents & Leases Payments** | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 |
| **Bankruptcy Related Expenses** | | | | | | | | | | | | |
| Subchatper V Trustee | - | - | - | - | - | - | - | - | - | - | - | - |
| Allowed Priority Tax Claims | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 |
| Allowed UMB Secured Claim | 37,500 | 37,500 | 37,500 | 37,500 | 37,500 | 37,500 | 37,500 | 37,500 | 37,500 | 37,500 | 37,500 | 37,500 |
| Allowed Unsecured Claims | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 |
| Debtors Counsel - Tittle Law Group (estimate) | - | - | - | - | - | - | - | - | - | - | - | - |
| Financial Advisor - Bennett Thrasher, LLP | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Bankruptcy Related Expenses** | 40,217 | 40,217 | 40,217 | 40,217 | 40,217 | 40,217 | 40,217 | 40,217 | 40,217 | 40,217 | 40,217 | 40,217 |
| **Total Net Cash Flow** | (0.00) | 0.00 | (0.00) | 0.00 | (0.00) | (0.00) | 0.00 | (0.00) | 0.00 | (0.00) | 0.00 | 0.00 |
| Ending Cash Balance | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 |

## SCHEDULE OF ASSUMED EXECUTORY CONTRACTS

| Contract Party | Contract | Cure Amount |
| --- | --- | --- |
| Heritage MOB Ventures LP | Commercial Lease | $0.00 |

# **EXHIBIT B**

**Amended Transfer Agreement**

**Uptown Dental Solutions, PLLC d/b/a Lakeside Dental Solutions**

**PLLC Membership Interest Transfer Agreement**

**Term Sheet**

**Dated June 22, 2025**

| | |
|---|---|
| **Seller:** | Rashid Beirute-Prada |
| **Buyer:** | Shane Shoulders with NewCo and/or Assigns |
| **Purchase and Sale of Membership:** | Subject to the terms and conditions hereof, Seller hereby sells, assigns and transfers to the Buyer, one hundred percent (100%) of Seller's right, title and interest in and to or otherwise connected with his membership shares (the "Transferred Membership Interests") in Uptown Dental Solutions, PLLC d/b/a Lakeside Dental Solutions (the "Debtor"), free and clear of any and all liens, encumbrances, security agreements, pledges, hypothecations, equities, options, rights, claims, charges or restrictions or interests of any kind (collectively, "Encumbrances"), in consideration for the payment by the Buyer of the Purchase Price (defined below). |
| **Purchase Price:** | The Buyer agrees to acquire the Transferred Membership Interests of the Buyer for a total purchase price of **$1,350,000.00** (the "Purchase Price") to be paid as follows:<br><br>(a) Buyer shall pay **$250,000.00** ("Initial Payment") to the post-confirmation Debtor (the "Reorganized Debtor") within ten (10) business days following an Order approving the Debtor's *First Amended Chapter 11 Plan of Reorganization* (the "Plan").<br><br>(b) The remaining portion of **$1,100,000.00** (the "Remaining Payments") shall be made available for use by the Reorganized Debtor to ensure that the Debtor makes all Plan payments pursuant to the five-year projections (the "Five-Year Projections"), which are attached to the Plan, and are attached hereto as **Exhibit A**.  In the event the Reorganized Debtor wishes to prepay any of the Plan payments identified on the Five-Year Projections, the Seller and Buyer must both consent in writing. |
| **Use of Proceeds** | The proceeds from the Initial Payment shall first be used to pay all administrative expenses of the Debtor with all remaining proceeds to be used to pay post-confirmation operating expenses of the Reorganized Debtor, as identified on the Five-Year Projections.<br><br>The proceeds from the Remaining Payments shall solely be used to pay post-confirmation operating expenses of the Reorganized Debtor to ensure that the Reorganized Debtor satisfies all Plan |

| | |
|---|---|
| | payments identified on the Five-Year Projections ("Plan Payments"). |
| | **For the avoidance of doubt, Buyer's capital contribution into the Reorganized Debtor will be limited to the Purchase Price. After the Purchase Price has been fully utilized, Seller shall be fully responsible for inserting the funds needed to maintain operations and make all Plan Payments, either through the Seller's Profit Allocation or personal assets. Seller's obligation to maintain positive cash flow shall terminate upon the earlier of: (i) the completion of the Plan Payments; or (ii) the end of the five-year period in the 5-Year Projections.** |
| **Closing Date:** | The tenth business day following the entry of an Order confirming the Plan by the U.S. Bankruptcy Court for the Northern District of Texas. |
| **Profit Allocation:** | (a) Seller shall receive a profits interest related to his employment of 12.5% once the Reorganized Debtor achieves $1.75MM in annualized collections for at least 3 months in a row. The Profit Allocation shall increase to 15.0% once the Reorganized Debtor achieves annualized collections of $2.0MM in annualized collections for at least 3 months in a row. The Profit Allocation shall increase to 20.0% once the Reorganized Debtor achieves annualized collections of $2.25MM in annualized collections for at least 3 months in a row. |
| | (b) Profit Allocation may be converted into equity in the Reorganized Debtor of an equal percentage after the earlier of (i) eighteen (18) months of employment; or (ii) once the Reorganized Debtor achieves annualized collections of $2.0MM in annualized collections for at least 3 months in a row. |
| | (c) So long as the Profit Allocation is in place and equal to or less than 15.0%, Seller shall receive a 5% transaction fee at the capital event as part of his employment on net proceeds after transaction costs and debt repayment. |
| | (d) The Profit Allocation shall also apply to the net proceeds from the capital event after transaction costs and debt service. |
| **Management and Control:** | On the Effective Date of the Plan, the Buyer shall obtain full management and control of the Reorganized Debtor and shall comply with all requirements in the Plan, including making all Plan Payments. The Buyer shall be deemed the Plan Administrator of the Plan. |
| **Employment Agreement:** | On the Effective Date, Seller shall be awarded an employment agreement with the Reorganized Debtor for a period of two (2) years during which time Seller shall receive thirty-five percent |

Docusign Envelope ID: 43CE7931-AE67-488F-8B6F-59D353D2A2BB

| | |
|---|---|
| | (35%) of all collections from invoices billed for Seller's services. During the period of the employment agreement, Seller may only be terminated for cause. |
| **Conditions Precedent to Closing:** | The following conditions must be met at Closing:<br><br>(a) The Plan shall be in form and substance satisfactory to the Buyer in its sole and absolute discretion.<br><br>(b) The representations and warranties of the Seller shall be true and correct immediately prior to Closing, provided that such representations and warranties shall be made only as to circumstances existing as of the Closing Date and shall be further modified as described below under "Effect of Bankruptcy Filing." |
| **Conditions Precedent to Transferred Membership Interests** | On the Closing Date, the following conditions precedent shall have been satisfied:<br><br>(a) There shall exist no default under the terms of the Plan.<br><br>(b) The representations and warranties of the Seller shall be true and correct immediately prior to, and after giving effect to, such funding or issuance, as applicable, except to the extent that any such representation or warranty expressly relates only to an earlier date.<br><br>(c) The Bankruptcy Court shall have entered an Order confirming the Plan as applicable, in form and substance satisfactory to the Buyer, which Order shall be in full force and effect and shall not have been reversed, vacated or stayed and shall not have been amended, supplemented or otherwise modified without the prior written consent of the Buyer (which consent may be withheld in its sole discretion) authorizing and approving the Plan and the transactions contemplated thereby, including, without limitation, the acquisition of the Transferred Membership Interests. |
| **Effect of Bankruptcy Filing:** | The representations and warranties and the affirmative and negative covenants to be set forth in the Plan shall, to the extent required, as determined by the Buyer in its sole and absolute discretion, (i) address the legal effect of the bankruptcy filings made by the Seller with the Bankruptcy Court during the Chapter 11 Case and (ii) reflect provisions customary in a Plan. |
| **Representation and Warranties of Seller:** | Subject to the provision described above under "Effect of Bankruptcy Filing," Seller hereby represents and warrants to Buyer that:<br><br>(a) Seller is a corporation duly organized, validly existing and in good standing under the laws of the State of Texas with full corporate power and authority to enter into this Agreement and to |

| | |
|---|---|
| | carry out its obligations hereunder. The execution, delivery, and performance by Seller of this Agreement have been duly authorized by all necessary corporate action on the part of Seller, and, this Agreement is legally binding upon Seller in accordance with its terms;<br><br>(b) The execution, delivery, and performance by Seller of this Agreement and the transactions contemplated thereby will not (i) violate the provisions of any order, judgment, or decree of any court or other governmental agency or any arbitrator applicable to Seller or the Certificate of Incorporation or Bylaws of Seller; or (ii) result in a material breach of or constitute (with due notice or lapse of time or both) a material default under any contract or agreement to which Seller is a party or by which Seller is bound; and<br><br>(c) Seller is the sole beneficial and record holder of the Transferred Membership Interests, and upon consummation of the transactions contemplated by this Agreement, Seller shall have transferred to Buyer and Buyer shall have obtained from Seller all right, title and interest in the Transferred Membership Interests, free and clear of any and all liens, mortgages, hypothecations, collateral assignments, charges, encumbrances, title defects, security interests or claims (whether recorded or unrecorded) of any kind.<br><br>(d) Seller has not retained any investment banker, broker, or finder in connection with the transactions contemplated by this Agreement. |
| **Warranties of Buyer:** | The Buyer hereby represents and warrants to Seller that:<br><br>(a) Buyer, or an affiliate of Buyer established for this transaction, is duly organized, validly existing and in good standing under the laws of the State of Delaware with full corporate power and authority to enter into this Agreement and to carry out its obligations hereunder. The execution, delivery, and performance by Buyer of this Agreement have been duly authorized by all necessary corporate action on the part of Buyer, and, this Agreement is legally binding upon Buyer in accordance with its terms;<br><br>(b) The execution, delivery, and performance by Buyer of this Agreement and the transactions contemplated thereby will not (i) violate the provisions of any order, judgment, or decree of any court or other governmental agency or any arbitrator applicable to Buyer or the Certificate of Organization or Company Agreement |

Docusign Envelope ID: 43CE7931-AE67-488F-8B6F-59D353D2A2BB

| | |
|---|---|
| | of Buyer; or (ii) result in a material breach of or constitute (with due notice or lapse of time or both) a material default under any contract or agreement to which Buyer is a party or by which Buyer is bound; and

(c) Buyer has not retained any investment banker, broker, or finder in connection with the transactions contemplated by this Agreement. |
| **Miscellaneous:** | a. <u>Waiver and Amendment</u>. Neither this Agreement nor any provision hereof will be waived, modified, changed, discharged, or terminated except by an instrument in writing signed by the Party against whom any waiver, modification, charge, discharge, or termination is sought.

b. <u>Binding Effect</u>. The Agreement shall be binding upon, and inure to the benefit of, the Parties hereto and their successors, beneficiaries and permitted assigns, in accordance with the terms hereof.

c. <u>Assignability</u>. The Agreement, once executed, is not transferable or assignable by either Party.

d. <u>Applicable Law</u>. The Agreement and the rights of the Parties thereunder will be governed by and construed in all respects in accordance with the laws of the State of Texas, other than such laws, rules, regulations and case law that would result in the application of the laws of a jurisdiction other than the State of Texas.

e. <u>Severability</u>. If any provision of this Agreement is deemed or held to be illegal, invalid or unenforceable, this Agreement shall be considered divisible and inoperative as to such provision to the extent it is deemed to be illegal, invalid or unenforceable, and in all other respects this Agreement shall remain in full force and effect; provided, however, that if any provision of this Agreement is deemed or held to be illegal, invalid or unenforceable the parties hereto agree to replace such illegal, invalid or unenforceable provision with a provision that is legal, valid and enforceable that achieves the original intent of the parties as closely as possible. Further, should any provision contained in this Agreement ever be reformed or rewritten by any judicial body of competent jurisdiction, such provision, as so reformed or rewritten, shall be binding upon all of the parties hereto.

f. <u>Interpretation</u>. This Agreement has been negotiated by the respective parties hereto and the language hereof shall not be |

Docusign Envelope ID: 43CE7931-AE67-488F-8B6F-59D353D2A2BB

construed for or against any Party. Accordingly, any rule of law or any legal decision that would require interpretation of any claimed ambiguities in this Agreement against the drafting party has no application and is expressly waived. Each Party has had an opportunity to consult with its own legal counsel in connection with this Agreement and the Transaction.

g. <u>Expenses</u>. All fees and expenses incurred in connection with or related to this Agreement and the transactions contemplated hereby, shall be paid by the Party incurring such fees or expenses; provided that, to the extent any party hereto incurs fees or expenses (including attorney fees and expenses) in connection with enforcing its rights under this Agreement as a result of any other party's breach of this Agreement, the fees and expenses of the substantially prevailing party will be paid or reimbursed by the non-prevailing party(ies).

h. <u>Further Assurances</u>. Each Party agrees to cooperate fully with the other Parties and execute any and all supplementary documents or instruments to consummate the Transaction, and take all actions which may be necessary or appropriate to give full force and effect to all of the terms and intent of this Agreement.

i. <u>Notices</u>. All notices or other communications pursuant to this Agreement shall be in writing and shall be deemed to be sufficient if delivered personally, sent by email, nationally recognized, overnight courier, or mailed by registered or certified mail (return receipt requested), postage prepaid, to the parties at the addresses set forth on the signature page hereto. All such notices and other communications shall be deemed to have been given and received on the date of such delivery or rejection.

Signed by:

*Rashid Beirute-Prada, DDS, MDS*
224CD766449B476...

Rashid Beirute-Prada
Uptown Dental Solutions, PLLC

Signed by:

*Michael Richardson*
6CEEA375C2D9492...

Michael Richardson
Authorized Representative of NewCo

Docusign Envelope ID: 43CE7931-AE67-488F-8B6F-59D353D2A2BB

# **EXHIBIT A**

Five-Year Projections

# Uptown Dental Solutions, PLLC

5-Year Projections

| | | | | | | Year 1 | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Aug-25 | Sep-25 | Oct-25 | Nov-25 | Dec-25 | Jan-26 | Feb-26 | Mar-26 | Apr-26 | May-26 | Jun-26 | Jul-26 |
| Beginning Cash | - | 81,391.49 | 81,674.64 | 83,066.13 | 49,970.28 | 51,361.77 | 52,753.25 | 52,649.91 | 54,041.39 | 20,945.55 | 22,337.03 | 21,101.25 |
| **Receipts** | | | | | | | | | | | | |
| Receipts | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 |
| Contribution by Shane Shoulders of NewCo | 250,000 | - | | | | | | | | | | 12,000 |
| **Total Receipts** | 373,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 135,500 |
| **Operating Disbursements** | | | | | | | | | | | | |
| Dental Supplies & Dental Lab | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 |
| Medical supplies & processing | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 |
| Office Expenses (per month) | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 1,298 | 649 |
| Other Vendors/Repairs/Maintenance (placeholder) | - | | | | | | | | | | | |
| Auto-ACH Payments - Principal & Mass Mutual - Life Ins x2 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 966 | 483 |
| Utilities (divide by 4 weeks) | 1,546 | 1,546 | 1,546 | 1,933 | 1,546 | 1,546 | 1,933 | 1,546 | 1,933 | 1,546 | 1,933 | 1,933 |
| Marketing (paid monthly) | - | - | | | | | | | | | | |
| Payroll (staff) | 28,500 | 28,500 | 28,500 | 41,500 | 28,500 | 28,500 | 28,500 | 28,500 | 41,500 | 28,500 | 28,500 | 41,500 |
| Payroll (Dr Rashid) | 20,000 | 20,000 | 20,000 | 30,000 | 20,000 | 20,000 | 20,000 | 20,000 | 30,000 | 20,000 | 20,000 | 30,000 |
| Payroll (2nd DDS) | 15,000 | 15,000 | 15,000 | 22,500 | 15,000 | 15,000 | 15,000 | 15,000 | 22,500 | 15,000 | 15,000 | 22,500 |
| Payroll Taxes (6.2% + 1.45%) employer %ss | 4,667 | 4,667 | 4,667 | 7,000 | 4,667 | 4,667 | 4,667 | 4,667 | 7,000 | 4,667 | 4,667 | 7,000 |
| Workers Comp Insurance | 319 | 319 | 319 | 478 | 319 | 319 | 319 | 319 | 478 | 319 | 319 | 478 |
| TX Franchise Tax (due 11.15.2024) - is this paid pre or post petition? | - | | | | | | | | | | | |
| Business Insurance - confirm amount | 1,108 | 2,217 | 1,108 | 2,217 | 1,108 | 1,108 | 2,217 | 1,108 | 2,217 | 1,108 | 2,217 | 2,217 |
| **Total Operating Disbursements** | 91,892 | 93,000 | 91,892 | 126,379 | 91,892 | 91,892 | 93,387 | 91,892 | 126,379 | 91,892 | 94,519 | 126,379 |
| **Net Cash Flow (Operations)** | 281,608 | 30,500 | 31,608 | (2,879) | 31,608 | 31,608 | 30,113 | 31,608 | (2,879) | 31,608 | 28,981 | 9,121 |
| **Rents & Leases** | | | | | | | | | | | | |
| Rent (Heritage location) - assume 1st week of month | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 |
| **Total Rents & Leases Payments** | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 |
| **Bankruptcy Related Expenses** | | | | | | | | | | | | |
| Subchapter V Trustee | 5,000 | - | | | | | | | | | | |
| Allowed Priority Tax Claims | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 |
| Allowed UMB Secured Claim | 13,500 | 13,500 | 13,500 | 13,500 | 13,500 | 13,500 | 13,500 | 13,500 | 13,500 | 13,500 | 13,500 | 13,500 |
| Allowed Unsecured Claims | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 |
| Debtors Counsel - Tittle Law Group (estimate) | 115,000 | - | | | | | | | | | | |
| Financial Advisor - Bennett Thrasher, LLP | 50,000 | - | | | | | | | | | | |
| **Total Bankruptcy Related Expenses** | 186,217 | 16,217 | 16,217 | 16,217 | 16,217 | 16,217 | 16,217 | 16,217 | 16,217 | 16,217 | 16,217 | 16,217 |
| **Total Net Cash Flow** | 81,391 | 283 | 1,391 | (33,096) | 1,391 | 1,391 | (103) | 1,391 | (33,096) | 1,391 | (1,236) | (21,096) |
| Ending Cash Balance | 81,391 | 81,675 | 83,066 | 49,970 | 51,362 | 52,753 | 52,650 | 54,041 | 20,946 | 22,337 | 21,101 | 5 |

Docusign Envelope ID: 43CE7931-AE67-488F-8B6F-59D353D2A2BB

# Uptown Dental Solutions, PLLC

5-Year Projections

| | Aug-26 | Sep-26 | Oct-26 | Nov-26 | Dec-26 | Jan-27 | Feb-27 | Mar-27 | Apr-27 | May-27 | Jun-27 | Jul-27 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Year 2 | | | | | | |
| Beginning Cash | 5.00 | 5.49 | 4.64 | 5.13 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 |
| **Receipts** | | | | | | | | | | | | |
| Receipts | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 |
| Contribution by Shane Shoulders of NewCo | 4,609 | 5,716 | 4,609 | 39,096 | 4,609 | 4,609 | 6,103 | 4,609 | 39,096 | 4,609 | 7,236 | 39,096 |
| **Total Receipts** | 128,109 | 129,216 | 128,109 | 162,596 | 128,109 | 128,109 | 129,603 | 128,109 | 162,596 | 128,109 | 130,736 | 162,596 |
| **Operating Disbursements** | | | | | | | | | | | | |
| Dental Supplies & Dental Lab | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 |
| Medical supplies & processing | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 |
| Office Expenses (per month) | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 1,298 | 649 |
| Other Vendors/Repairs/Maintenance (placeholder) | - | - | - | - | - | - | - | - | - | - | - | - |
| Auto-ACH Payments - Principal & Mass Mutual - Life Ins x2 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 966 | 483 |
| Utilities (divide by 4 weeks) | 1,546 | 1,546 | 1,546 | 1,933 | 1,546 | 1,546 | 1,933 | 1,546 | 1,933 | 1,546 | 1,933 | 1,933 |
| Marketing (paid monthly) | - | - | - | - | - | - | - | - | - | - | - | - |
| Payroll (staff) | 28,500 | 28,500 | 28,500 | 41,500 | 28,500 | 28,500 | 28,500 | 28,500 | 41,500 | 28,500 | 28,500 | 41,500 |
| Payroll (Dr Rashid) | 20,000 | 20,000 | 20,000 | 30,000 | 20,000 | 20,000 | 20,000 | 20,000 | 30,000 | 20,000 | 20,000 | 30,000 |
| Payroll (2nd DDS) | 15,000 | 15,000 | 15,000 | 22,500 | 15,000 | 15,000 | 15,000 | 15,000 | 22,500 | 15,000 | 15,000 | 22,500 |
| Payroll Taxes (6.2% + 1.45%) employer %s | 4,667 | 4,667 | 4,667 | 7,000 | 4,667 | 4,667 | 4,667 | 4,667 | 7,000 | 4,667 | 4,667 | 7,000 |
| Workers Comp Insurance | 319 | 319 | 319 | 478 | 319 | 319 | 319 | 319 | 478 | 319 | 319 | 478 |
| TX Franchise Tax (due 11.15.2024) - is this paid pre or post petition? | - | - | - | - | - | - | - | - | - | - | - | - |
| Business Insurance - confirm amount | 1,108 | 2,217 | 1,108 | 2,217 | 1,108 | 1,108 | 2,217 | 1,108 | 2,217 | 1,108 | 2,217 | 2,217 |
| **Total Operating Disbursements** | 91,892 | 93,000 | 91,892 | 126,379 | 91,892 | 91,892 | 93,387 | 91,892 | 126,379 | 91,892 | 94,519 | 126,379 |
| **Net Cash Flow (Operations)** | 36,217 | 36,216 | 36,217 | 36,216 | 36,217 | 36,217 | 36,217 | 36,217 | 36,217 | 36,217 | 36,217 | 36,217 |
| **Rents & Leases** | | | | | | | | | | | | |
| Rent (Heritage location) - assume 1st week of month | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 |
| **Total Rents & Leases Payments** | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 |
| **Bankruptcy Related Expenses** | | | | | | | | | | | | |
| Subchapter V Trustee | - | - | - | - | - | - | - | - | - | - | - | - |
| Allowed Priority Tax Claims | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 |
| Allowed UMB Secured Claim | 19,500 | 19,500 | 19,500 | 19,500 | 19,500 | 19,500 | 19,500 | 19,500 | 19,500 | 19,500 | 19,500 | 19,500 |
| Allowed Unsecured Claims | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 |
| Debtors Counsel - Tittle Law Group (estimate) | - | - | - | - | - | - | - | - | - | - | - | - |
| Financial Advisor - Bennett Thrasher, LLP | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Bankruptcy Related Expenses** | 22,217 | 22,217 | 22,217 | 22,217 | 22,217 | 22,217 | 22,217 | 22,217 | 22,217 | 22,217 | 22,217 | 22,217 |
| **Total Net Cash Flow** | 0 | (1) | 0 | (0) | (0.00) | 0.01 | (0.01) | 0.01 | (0.01) | 0.01 | (0.01) | 0.00 |
| Ending Cash Balance | 5 | 5 | 5 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 |

# Uptown Dental Solutions, PLLC

## 5-Year Projections

| | | | | | | Year 3 | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Aug-27 | Sep-27 | Oct-27 | Nov-27 | Dec-27 | Jan-28 | Feb-28 | Mar-28 | Apr-28 | May-28 | Jun-28 | Jul-28 |
| Beginning Cash | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 4.99 | 5.00 | 4.99 | 5.00 | 4.99 | 5.00 |
| **Receipts** | | | | | | | | | | | | |
| Receipts | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 |
| Contribution by Shane Shoulders of NewCo | 10,608 | 11,717 | 10,608 | 45,096 | 10,608 | 10,608 | 12,103 | 10,608 | 45,096 | 10,608 | 13,236 | 45,096 |
| **Total Receipts** | 134,108 | 135,217 | 134,108 | 168,596 | 134,108 | 134,108 | 135,603 | 134,108 | 168,596 | 134,108 | 136,736 | 168,596 |
| **Operating Disbursements** | | | | | | | | | | | | |
| Dental Supplies & Dental Lab | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 |
| Medical supplies & processing | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 |
| Office Expenses (per month) | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 1,298 | 649 |
| Other Vendors/Repairs/Maintenance (placeholder) | - | - | - | - | - | - | - | - | - | - | - | - |
| Auto-ACH Payments - Principal & Mass Mutual - Life Ins x2 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 966 | 483 |
| Utilities (divide by 4 weeks) | 1,546 | 1,546 | 1,546 | 1,933 | 1,546 | 1,546 | 1,933 | 1,546 | 1,933 | 1,546 | 1,933 | 1,933 |
| Marketing (paid monthly) | - | - | - | - | - | - | - | - | - | - | - | - |
| Payroll (staff) | 28,500 | 28,500 | 28,500 | 41,500 | 28,500 | 28,500 | 28,500 | 28,500 | 41,500 | 28,500 | 28,500 | 41,500 |
| Payroll (Dr Rashid) | 20,000 | 20,000 | 20,000 | 30,000 | 20,000 | 20,000 | 20,000 | 20,000 | 30,000 | 20,000 | 20,000 | 30,000 |
| Payroll (2nd DDS) | 15,000 | 15,000 | 15,000 | 22,500 | 15,000 | 15,000 | 15,000 | 15,000 | 22,500 | 15,000 | 15,000 | 22,500 |
| Payroll Taxes (6.2% + 1.45%) employer %s | 4,667 | 4,667 | 4,667 | 7,000 | 4,667 | 4,667 | 4,667 | 4,667 | 7,000 | 4,667 | 4,667 | 7,000 |
| Workers Comp Insurance | 319 | 319 | 319 | 478 | 319 | 319 | 319 | 319 | 478 | 319 | 319 | 478 |
| TX Franchise Tax (due 11.15.2024) - is this paid pre or post petition? | - | - | - | - | - | - | - | - | - | - | - | - |
| Business Insurance - confirm amount | 1,108 | 2,217 | 1,108 | 2,217 | 1,108 | 1,108 | 2,217 | 1,108 | 2,217 | 1,108 | 2,217 | 2,217 |
| **Total Operating Disbursements** | 91,892 | 93,000 | 91,892 | 126,379 | 91,892 | 91,892 | 93,387 | 91,892 | 126,379 | 91,892 | 94,519 | 126,379 |
| **Net Cash Flow (Operations)** | 42,216 | 42,217 | 42,216 | 42,217 | 42,216 | 42,216 | 42,217 | 42,216 | 42,217 | 42,216 | 42,217 | 42,217 |
| **Rents & Leases** | | | | | | | | | | | | |
| Rent (Heritage location) - assume 1st week of month | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 |
| **Total Rents & Leases Payments** | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 |
| **Bankruptcy Related Payments** | | | | | | | | | | | | |
| Subchaper V Trustee | - | - | - | - | - | - | - | - | - | - | - | - |
| Allowed Priority Tax Claims | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 |
| Allowed UMB Secured Claim | 25,500 | 25,500 | 25,500 | 25,500 | 25,500 | 25,500 | 25,500 | 25,500 | 25,500 | 25,500 | 25,500 | 25,500 |
| Allowed Unsecured Claims | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 |
| Debtors Counsel - Tittle Law Group (estimate) | - | - | - | - | - | - | - | - | - | - | - | - |
| Financial Advisor - Bennett Thrasher, LLP | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Bankruptcy Related Expenses** | 28,217 | 28,217 | 28,217 | 28,217 | 28,217 | 28,217 | 28,217 | 28,217 | 28,217 | 28,217 | 28,217 | 28,217 |
| **Total Net Cash Flow** | (0.00) | 0.00 | (0.00) | 0.00 | (0.00) | (0.00) | 0.00 | 0.00 | 0.00 | (0.00) | 0.00 | 0.00 |
| **Ending Cash Balance** | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 4.99 | 5.00 | 4.99 | 5.00 | 5.00 |

# Uptown Dental Solutions, PLLC

## 5-Year Projections

| | | | | | | Year 4 | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Aug-28 | Sep-28 | Oct-28 | Nov-28 | Dec-28 | Jan-29 | Feb-29 | Mar-29 | Apr-29 | May-29 | Jun-29 | Jul-29 |
| Beginning Cash | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 4.99 | 5.00 | 4.99 | 5.00 | 4.99 | 5.00 |
| **Receipts** | | | | | | | | | | | | |
| Receipts | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 |
| Contribution by Shane Shoulders of NewCo | 16,609 | 17,717 | 16,609 | 51,096 | 16,609 | 16,609 | 18,103 | 16,609 | 51,096 | 16,609 | 19,236 | 51,096 |
| **Total Receipts** | 140,109 | 141,217 | 140,109 | 174,596 | 140,109 | 140,109 | 141,603 | 140,109 | 174,596 | 140,109 | 142,736 | 174,596 |
| **Operating Disbursements** | | | | | | | | | | | | |
| Dental Supplies & Dental Lab | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 |
| Medical supplies & processing | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 |
| Office Expenses (per month) | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 1,298 | 649 |
| Other Vendors/Repairs/Maintenance (placeholder) | - | - | - | - | - | - | - | - | - | - | - | - |
| Auto-ACH Payments - Principal & Mass Mutual - Life Ins x2 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 966 | 483 |
| Utilities (divide by 4 weeks) | 1,546 | 1,546 | 1,546 | 1,933 | 1,546 | 1,546 | 1,933 | 1,546 | 1,933 | 1,546 | 1,933 | 1,933 |
| Marketing (paid monthly) | - | - | - | - | - | - | - | - | - | - | - | - |
| Payroll (staff) | 28,500 | 28,500 | 28,500 | 41,500 | 28,500 | 28,500 | 28,500 | 28,500 | 41,500 | 28,500 | 28,500 | 41,500 |
| Payroll (Dr Rashid) | 20,000 | 20,000 | 20,000 | 30,000 | 20,000 | 20,000 | 20,000 | 20,000 | 30,000 | 20,000 | 20,000 | 30,000 |
| Payroll (2nd DDS) | 15,000 | 15,000 | 15,000 | 22,500 | 15,000 | 15,000 | 15,000 | 15,000 | 22,500 | 15,000 | 15,000 | 22,500 |
| Payroll Taxes (6.2% + 1.45%) employer %s | 4,667 | 4,667 | 4,667 | 7,000 | 4,667 | 4,667 | 4,667 | 4,667 | 7,000 | 4,667 | 4,667 | 7,000 |
| Workers Comp Insurance | 319 | 319 | 319 | 478 | 319 | 319 | 319 | 319 | 478 | 319 | 319 | 478 |
| TX Franchise Tax (due 11.15.2024) - is this paid pre or post petition? | - | - | - | - | - | - | - | - | - | - | - | - |
| Business Insurance - confirm amount | 1,108 | 2,217 | 1,108 | 2,217 | 1,108 | 1,108 | 2,217 | 1,108 | 2,217 | 1,108 | 2,217 | 2,217 |
| **Total Operating Disbursements** | 91,892 | 93,000 | 91,892 | 126,379 | 91,892 | 91,892 | 93,387 | 91,892 | 126,379 | 91,892 | 94,519 | 126,379 |
| **Net Cash Flow (Operations)** | 48,217 | 48,217 | 48,217 | 48,217 | 48,217 | 48,217 | 48,217 | 48,217 | 48,217 | 48,217 | 48,217 | 48,217 |
| **Rents & Leases** | | | | | | | | | | | | |
| Rent (Heritage location) - assume 1st week of month | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 |
| **Total Rents & Leases Payments** | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 |
| **Bankruptcy Related Expenses** | | | | | | | | | | | | |
| Subchapter V Trustee | - | - | - | - | - | - | - | - | - | - | - | - |
| Allowed Priority Tax Claims | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 |
| Allowed UMB Secured Claim | 31,500 | 31,500 | 31,500 | 31,500 | 31,500 | 31,500 | 31,500 | 31,500 | 31,500 | 31,500 | 31,500 | 31,500 |
| Allowed Unsecured Claims | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 |
| Debtors Counsel - Tittle Law Group (estimate) | - | - | - | - | - | - | - | - | - | - | - | - |
| Financial Advisor - Bennett Thrasher, LLP | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Bankruptcy Related Expenses** | 34,217 | 34,217 | 34,217 | 34,217 | 34,217 | 34,217 | 34,217 | 34,217 | 34,217 | 34,217 | 34,217 | 34,217 |
| **Total Net Cash Flow** | (0.00) | 0.00 | (0.00) | 0.00 | (0.00) | (0.00) | 0.00 | (0.00) | 0.00 | (0.00) | 0.00 | 0.00 |
| Ending Cash Balance | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 4.99 | 5.00 | 4.99 | 5.00 | 5.00 |

Docusign Envelope ID: 43CE7931-AE67-488F-8B6F-59D353D2A2BB

# Uptown Dental Solutions, PLLC

## 5-Year Projections

| | | | | | | Year 5 | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Aug-29 | Sep-29 | Oct-29 | Nov-29 | Dec-29 | Jan-30 | Feb-30 | Mar-30 | Apr-30 | May-30 | Jun-30 | Jul-30 |
| Beginning Cash | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 5.00 | 4.99 | 5.00 | 4.99 | 5.00 | 4.99 | 5.00 |
| **Receipts** | | | | | | | | | | | | |
| Receipts | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 | 123,500 |
| Contribution by Shane Shoulders of NewCo | 22,609 | 23,717 | 22,609 | 57,096 | 22,609 | 22,609 | 24,103 | 22,609 | 57,096 | 22,609 | 25,236 | 57,096 |
| **Total Receipts** | 146,109 | 147,217 | 146,109 | 180,596 | 146,109 | 146,109 | 147,603 | 146,109 | 180,596 | 146,109 | 148,736 | 180,596 |
| **Operating Disbursements** | | | | | | | | | | | | |
| Dental Supplies & Dental Lab | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 |
| Medical supplies & processing | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 | 1,621 |
| Office Expenses (per month) | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 649 | 1,298 | 649 |
| Other Vendors/Repairs/Maintenance (placeholder) | - | - | - | - | - | - | - | - | - | - | - | - |
| Auto-ACH Payments - Principal & Mass Mutual - Life Ins x2 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 483 | 966 | 483 |
| Utilities (divide by 4 weeks) | 1,546 | 1,546 | 1,546 | 1,933 | 1,546 | 1,546 | 1,933 | 1,546 | 1,933 | 1,546 | 1,933 | 1,933 |
| Marketing (paid monthly) | - | - | - | - | - | - | - | - | - | - | - | - |
| Payroll (staff) | 28,500 | 28,500 | 28,500 | 41,500 | 28,500 | 28,500 | 28,500 | 28,500 | 41,500 | 28,500 | 28,500 | 41,500 |
| Payroll (Dr Rashid) | 20,000 | 20,000 | 20,000 | 30,000 | 20,000 | 20,000 | 20,000 | 20,000 | 30,000 | 20,000 | 20,000 | 30,000 |
| Payroll (2nd DDS) | 15,000 | 15,000 | 15,000 | 22,500 | 15,000 | 15,000 | 15,000 | 15,000 | 22,500 | 15,000 | 15,000 | 22,500 |
| Payroll Taxes (6.2% + 1.45%) employer %s | 4,667 | 4,667 | 4,667 | 7,000 | 4,667 | 4,667 | 4,667 | 4,667 | 7,000 | 4,667 | 4,667 | 7,000 |
| Workers Comp Insurance | 319 | 319 | 319 | 478 | 319 | 319 | 319 | 319 | 478 | 319 | 319 | 478 |
| TX Franchise Tax (due 11.15.2024) - is this paid pre or post petition? | - | - | - | - | - | - | - | - | - | - | - | - |
| Business Insurance - confirm amount | 1,108 | 2,217 | 1,108 | 2,217 | 1,108 | 1,108 | 2,217 | 1,108 | 2,217 | 1,108 | 2,217 | 2,217 |
| **Total Operating Disbursements** | 91,892 | 93,000 | 91,892 | 126,379 | 91,892 | 91,892 | 93,387 | 91,892 | 126,379 | 91,892 | 94,519 | 126,379 |
| | | | | | | | | | | | | |
| **Net Cash Flow (Operations)** | 54,217 | 54,217 | 54,217 | 54,217 | 54,217 | 54,217 | 54,217 | 54,217 | 54,217 | 54,217 | 54,217 | 54,217 |
| | | | | | | | | | | | | |
| **Rents & Leases** | | | | | | | | | | | | |
| Rent (Heritage location) - assume 1st week of month | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 |
| **Total Rents & Leases Payments** | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 |
| | | | | | | | | | | | | |
| **Bankruptcy Related Expenses** | | | | | | | | | | | | |
| Subchapter V Trustee | - | - | - | - | - | - | - | - | - | - | - | - |
| Allowed Priority Tax Claims | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 | 39 |
| Allowed UHB Secured Claim | 37,500 | 37,500 | 37,500 | 37,500 | 37,500 | 37,500 | 37,500 | 37,500 | 37,500 | 37,500 | 37,500 | 37,500 |
| Allowed Unsecured Claims | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 | 2,678 |
| Debtors Counsel - Tittle Law Group (estimate) | - | - | - | - | - | - | - | - | - | - | - | - |
| Financial Advisor - Bennett Thrasher, LLP | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Bankruptcy Related Expenses** | 40,217 | 40,217 | 40,217 | 40,217 | 40,217 | 40,217 | 40,217 | 40,217 | 40,217 | 40,217 | 40,217 | 40,217 |
| | | | | | | | | | | | | |
| **Total Net Cash Flow** | (0.00) | 0.00 | (0.00) | 0.00 | (0.00) | (0.00) | 0.00 | (0.00) | 0.00 | (0.00) | 0.00 | 0.00 |
| | | | | | | | | | | | | |
| Ending Cash Balance | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 |